# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CASA DE MARYLAND, *et. al.*,

        Plaintiffs,

   v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et. al.,*

        Defendants.

Case No.: 17-cv-2942-PWG

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT, OR IN THE ALTERNATIVE, TO COMPEL COMPLIANCE WITH THE FOURTH CIRCUIT MANDATE

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................... 3

    A.      DACA and DACA Rescission-Related Litigation........................................... 3

    B.      Defendants' Intentional Noncompliance with the Courts' Orders .............................. 5

III.    ARGUMENT .......................................................................................................... 11

    A.      The Duke Memorandum Was Vacated, Rendering it Null and Void, and Thus the DACA Program Returned to the Status Quo Ante. ................................................ 12

    B.      Defendants are Required to Administer the Status Quo Ante. .................................. 13

    C.      Defendants Knew Their Actions Did Not Comply With the Requirement to Restore the DACA Program to the Status Quo Ante. .................................................. 15

    D.      Plaintiffs and the Public Have Been Harmed by Defendants' Noncompliance.......... 17

    E.      Contempt and Compelled Compliance are Appropriate Here Because the Government Has Knowingly and Intentionally Defied Court Decrees. ..................... 18

IV.     CONCLUSION ....................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action on Smoking and Health v. C.A.B.,*
   713 F.2d 795 (D.C. Cir. 1983) ..........................................................................12, 13

*American Great Lakes Ports Ass'n v. Schultz,*
   962 F.3d 510 (D.C. Cir. 2020) ................................................................................12

*Batalla Vidal v. Nielsen,*
   No. 18-589 .............................................................................................................3, 4

*Calvillo Manriquez v. Devos,*
   411 F. Supp. 3d 535 (N.D. Cal. 2019) ...................................................................19

*Casa De Maryland v. United States Department of Homeland Security,*
   924 F.3d 684, 706 (4th Cir. 2019) ................................................................... *passim*

*Department of Homeland Security v. Regents of the University of California,*
   140 S. Ct. 1891 (2020) ..................................................................................... *passim*

*In re General Motors Corp.,*
   61 F.3d 256 (4th Cir. 1995) ...................................................................................11

*International Ladies' Garment Workers' Union v. Donovan,*
   733 F.2d 920 (D.C. Cir. 1984) ........................................................................13, 19

*In re Kessler,*
   100 F.3d 1015 (D.C. Cir. 1996), *as amended* (Jan. 17, 1997) ...............................18

*Mangum v. Hallembaek,*
   910 F.3d 770 (4th Cir. 2018) .....................................................................12, 15, 17

*Marbury v. Madison,*
   5 U.S. 137 (1803).......................................................................................................2

*NAACP v. Trump,*
   No. 18-588 .................................................................................................................3

*National Venture Capital Ass'n. v. Duke,*
   291 F. Supp. 3d 5 (D.D.C. 2017) ...........................................................................19

*Rainbow School, Inc. v. Rainbow Early Education Holding LLC,*
   887 F.3d 610 (4th Cir. 2018) ..................................................................................11

*Shillitani v. United States,*
    384 U.S. 364 (1966)..................................................................................................18

*South Carolina v. United States,*
    907 F.3d 742 (4th Cir. 2018) ...................................................................................19

*United States v. Bell,*
    5 F.3d 64 (4th Cir. 1993) .........................................................................................11

**Statutes**

18 U.S.C. 401 ...............................................................................................................11

**Other Authorities**

Adam Liptak and Michael D. Shear, *Trump Can't Immediately End DACA,
    Supreme Court Rules*, NEW YORK TIMES,
    https://www.nytimes.com/2020/06/18/us/trump-daca-supreme-court.html .............5

Department of Homeland Security, Department of Homeland Security Will Reject
    Initial Requests for DACA As It Weighs Future of the Program (July 28,
    2020), https://www.dhs.gov/news/2020/07/28/department-homeland-security-
    will-reject-initial-requests-daca-it-weighs-future ....................................................9

Mark Joseph Stern, *Trump is Now Openly Defying the Supreme Court*, SLATE
    (July 28, 2020, 5:20 PM), https://slate.com/news-and-politics/2020/07/daca-
    donald-trump-supreme-court.html ...........................................................................11

Mot. to Stay Mandate, *Casa De Md.*, No. 18-1521 (4th Cir. May 31, 2019) .................4

*Statement On Supreme Court Decision On DACA* (June 18, 2020)
    https://www.dhs.gov/news/2020/06/18/dhs-statement-supreme-court-decision-
    daca ........................................................................................................................5, 6

*Trump didn't like rulings on DACA. So he's defying them*, WASHINGTON POST
    (Aug. 1, 2020), https://www.washingtonpost.com/opinions/trump-didnt-like-
    rulings-on-daca-so-hes-defying-them/2020/07/31/36458e06-d1e1-11ea-9038-
    af089b63ac21_story.html .......................................................................................10

TWITTER (July 30, 2020),
    https://twitter.com/homelandken/status/1288910645161799682?s=11.................10

TWITTER (June 18, 2020, 12:20 PM),
    https://twitter.com/realDonaldTrump/status/1273666793362673665 .....................5

TWITTER (June 19, 2020, 1:42 PM),
    https://twitter.com/HomelandKen/status/1274034795576791046 .........................14

*What Does the Trump Administration's Decisions Mean for DACA Recipients?,*
    NPR, July 29, 2020, https://www.npr.org/2020/07/29/896605451/what-does-
    the-trump-administrations-decision-mean-for-daca-recipients..............................................10

## I.     INTRODUCTION

The gravamen of the DACA-rescission litigation has not been whether Defendants have the authority to rescind the DACA program, but whether Defendants adequately considered the implications of rescinding the DACA program and explained their choice to do so.  The Supreme Court (and Fourth Circuit) found that Defendants did not.  The Department of Homeland Security ("DHS") rescinded the DACA program but "failed to consider [an] important aspect of the problem" as well as "what if anything to do about the hardship to DACA recipients."  *Department of Homeland Security v. Regents of the University of California,* 140 S. Ct. 1891, 1913–16 (2020) ("*Regents*"); *see also Casa De Maryland v. United States Department of Homeland Security*, 924 F.3d 684, 706 (4th Cir. 2019) ("*Casa De Md.*").  In short, the Supreme Court held the Defendants' obligations under the Administrative Procedure Act ("APA") are not optional.

After losing in the Supreme Court, Defendants' rescission of the DACA program was vacated, and the effect of that vacatur was the restoration of the program as it existed prior to September 5, 2017.  The program as of that date included the ability of eligible individuals to be initially considered for DACA and for existing DACA recipients to renew their status for two year periods and be considered for advance parole under the program rules then in effect.  That restoration of the DACA program would be a return to the status quo ante.  Defendants knew this would be the result of vacatur, and that once the rescission was vacated they would be obligated, under the status quo ante, to accept and process initial requests for DACA status, requests for two year renewals, and requests for advance parole.

Despite their acknowledged obligation to return the DACA program to the status quo ante, Defendants opted instead for a strategy of obfuscation and defiance, starting by denouncing the Supreme Court decision and declaring it an "affront to the rule of law."  Defendants failed to

1

restore the DACA program as it existed prior to September 5, 2017, and failed to inform the public of any changes to the DACA program resulting from the vacatur of the rescission.

The culmination of that defiance was Defendants' issuance of a memorandum on July 28, 2020 (the "Wolf Memorandum") purporting to announce "interim" changes to the DACA program, that effected a rescission of the DACA program with respect to initial applicants and a substantial modification of that program for existing DACA recipients.  These changes were expressly made without the Defendants having conducted a review of the DACA program and were given immediate effect while the Defendants conduct a review to decide "whether the DACA policy should be maintained, rescinded, or modified."   While the legality of the Wolf Memorandum under the APA is an issue for another day, Defendants have once again apparently decided that, although they may ultimately be able to effect a rescission or substantial modification of the DACA program, in the interim they need not satisfy pertinent legal obligations, in this case those mandated by law and the Supreme Court's *Regents* decision, the Fourth Circuit mandate, and this Court's July 17 Order (together the "Courts' Orders").

Process matters.  *See, e.g., Regents,* 140 S. Ct. at 1909 ("the Government should turn square corners in dealing with the people") (citation omitted).  The rule of law also matters.  As does respect for the judiciary.  *See, e.g., Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the Judicial Department to say what the law is.").  Defendants' statements in response to *Regents* demonstrated their intent to defy the clear mandate of the Supreme Court, and their subsequent conduct further underscores their contempt of the Court's ruling in *Regents*, as well as the mandate of the Fourth Circuit and this Court's July 17 Order.

2

For these reasons, and as further demonstrated below, Plaintiffs respectfully submit that the Court should order Defendants to show cause why they should not be held in contempt for their violation of the July 17 Order, and it should compel compliance with the Fourth Circuit mandate. The mandate and order require Defendants to restore the DACA program in full to its pre-rescission operation until such time as Defendants complete their DACA reconsideration process.

## II.     FACTUAL BACKGROUND

### A.     DACA and DACA Rescission-Related Litigation

Created in 2012, the DACA program allows for grants of deferred action to individuals who meet specific criteria. Deferred status individuals are also eligible for various benefits, including work authorization and advance parole, the ability to depart and return to territory of the United States. *See* Pls.' Compl., ECF No. 1 at 4, 22–23.

On September 5, 2017, Acting Secretary of Homeland Security Elaine C. Duke issued a memorandum (the "Duke Memorandum") rescinding the DACA program by directing, among other things, that "all initial DACA requests" and "applications for advance parole" be rejected. *Id.* at 8. In response, four challenges were filed. *Regents*, No. 18-587; *Batalla Vidal v. Nielsen*, No. 18-589 ("*Batalla Vidal*"); *Casa De Md.*, Pls.' Compl., ECF No. 1; *NAACP v. Trump*, No. 18-588 ("*NAACP*"). The district courts in *Regents* and *Batalla Vidal* enjoined Defendants, finding that the plaintiffs were likely to succeed on their claim that the rescission was arbitrary and capricious under the APA. These injunctions required DHS to allow existing DACA recipients to renew their enrollments. *Regents*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018); *Batalla Vidal*, 279 F. Supp. 3d 401, 437 (E.D.N.Y. 2018). Similarly, the *NAACP* court granted partial summary judgment to the plaintiffs on their APA claim, finding the Duke Memorandum was inadequately explained. 298 F. Supp. 3d 209, 243 (D.D.C. 2018). After Defendants failed to cure this

3

deficiency, the *NAACP* court vacated the Duke Memorandum, but stayed any effects of vacatur beyond DHS's obligations under the preliminary injunctions issued in *Regents* and *Batalla Vidal*. 315 F. Supp. 3d 457, 460, 473–474 (D.D.C. 2018).  The Government filed petitions for *certiorari* before judgment with the Supreme Court in each of these cases.

In this case, the parties cross-appealed Judge Titus's March 5, 2018 decision granting and denying in part summary judgment and granting an injunction to the Fourth Circuit.  On May 17, 2019, the Fourth Circuit vacated "DACA's rescission . . . as arbitrary and capricious" and remanded the matter for further proceedings consistent with the opinion.  *Casa De Md.*, 924 F.3d 684, 706 (4th Cir. 2019) (judgment vacating the DACA rescission "restores DACA to its pre-September 5, 2017, status").  The Government filed a petition for a writ of *certiorari* with the Supreme Court as well as a motion to stay the Fourth Circuit mandate.

In requesting a stay from the Fourth Circuit, the Government recognized that, on its face, the Fourth Circuit decision required a restoration of the status quo ante and resumption of processing initial requests for DACA and applications for advance parole.  The Government's stay motion stated that a stay was needed to avoid an "upset [of the] status quo by requiring, *inter alia*, that the government process DACA requests from individuals who have not previously received DACA."   Mot. to Stay Mandate at 1, *Casa De Md.*, No. 18-1521 (4th Cir. May 31, 2019), ECF No. 64.  Similarly, in requesting that the Plaintiffs agree to a stay, the Department of Justice wrote:

> We will ask for the entire mandate to be stayed, but as you know, that would only have effect as to the areas in which the decision is broader than the injunctions (on plaintiffs' consent, DDC stayed its order as to new applications and advance parole, so the Fourth Circuit's decision would be the first to change the status quo with respect to the injunctions).

Ex. A (May 22, 2019 email from A. Wright to J. Freedman, T. Pulham, and E. Dillingham re: Mandate).

The Fourth Circuit stayed its mandate during the pendency of the petition.  *See* ECF Nos. 86, 89.  Following its June 18, 2020 decision affirming the *NAACP* order vacating the Duke Memorandum as arbitrary and capricious, the Supreme Court denied the Government's petition for *certiorari* in this case on June 29, 2020.  ECF No. 92.  The Fourth Circuit's mandate became effective on June 30, 2020.  ECF No. 93.

On July 17, 2020, in accordance with *Regents* and the Fourth Circuit mandate, this Court issued an order granting relief to Plaintiffs (the "July 17 Order").  ECF No. 97.  The July 17 Order contained seven distinct elements, including that "[t]he rescission of the DACA policy is VACATED, and the policy is restored to its pre-September 5, 2017 status," and that "Defendants and their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, are ENJOINED from implementing or enforcing the DACA rescission and from taking any other action to rescind DACA that is not in compliance with applicable law."  ECF No. 97 at 3 (citing *Casa De Md.*, 924 F.3d at 706).

## B.      Defendants' Intentional Noncompliance with the Courts' Orders

Following *Regents*, Defendants issued a series of public denouncements:

- On June 18, 2020, President Trump wrote, "I am asking for a legal solution on DACA . . . The Supreme Court is not willing to give us one."[1]  He also stated, "now we have to start this process all over again."[2]

- On June 18, 2020, DHS posted a statement on its website from Acting DHS Secretary Chad Wolf declaring that the *Regents* "ruling usurps the clear authority of the Executive Branch to end unlawful programs."[3]

---

[1] Donald J. Trump (@realDonaldTrump), Twitter (June 18, 2020, 12:20 PM), https://twitter.com/realDonaldTrump/status/1273666793362673665.

[2] *Id.*; Adam Liptak and Michael D. Shear, *Trump Can't Immediately End DACA, Supreme Court Rules*, New York Times, https://www.nytimes.com/2020/06/18/us/trump-daca-supreme-court.html.

[3] Department of Homeland Security, *DHS Statement On Supreme Court Decision On DACA*, (June 18, 2020) https://www.dhs.gov/news/2020/06/18/dhs-statement-supreme-court-decision-daca.

- On June 18, 2020, DHS posted a second statement on its website from Acting DHS Deputy Secretary Ken Cuccinelli asserting that "The Supreme Court's decision is an affront to the rule of law."[4]

By July 24, 2020, Plaintiffs had twice informed this Court of Defendants' noncompliance with the Courts' Orders and their failure to restore the DACA program "to its pre-September 5, 2017, status." ECF Nos. 96, 99. Specifically, Plaintiffs demonstrated the U.S. Citizenship and Immigration Services ("USCIS") and U.S. Immigration and Customs Enforcement websites continued to state the agency was not accepting initial requests for DACA and also that "USCIS will not accept or approve advance parole requests from DACA recipients." *Id.* Plaintiffs also showed that Defendants had sent a DACA applicant a rejection of an initial request for DACA on the grounds that USCIS was not accepting initial requests for DACA. *Id.*

At the July 24 hearing, Defendants admitted that they had not restored the DACA program "to its pre-September 5, 2017, status," as they had been ordered to do. Defendants admitted:

- New applications for DACA were not being processed and decided as they had been prior to September 5, 2017: "[U]pon receipt of the Supreme Court's opinion, a change was made such that . . . although the application would be received by the Department, it would be neither granted nor rejected. It instead would be held, placed into a bucket pending the policy consideration that was to take place . . .," July 24, 2020 Hr'g Tr. at 17–18; "[t]hey are being held, again, pending future potential policy changes." *Id.* at 27.

- Applications for advance parole were not being processed in the manner they had been prior to September 5, 2017: "[T]he same answer applied to advance parole such that requests for advanced parole were neither being rejected nor granted. Instead, they were being held in a separate pending bucket while these ongoing policy deliberations completed," *id.* at 21; "certain applications for advance parole . . . had been rejected, rather than what they should have been . . . ." *Id.*

At the July 24 hearing, the Court authorized Plaintiffs to conduct limited discovery to support a show cause motion. ECF No. 101.

---

[4] *Id.*

Plaintiffs sent Defendants a discovery proposal on the afternoon of July 27, 2020.  Ex. B (July 27, 2020 email from E. Bower to S. Pezzi, B. Rosenberg, and R. Westmoreland re: Casa de Maryland, et al. v. DHS, et al.;  Case No. 8:17 cv 02942 PWG).  The following day, Defendants issued the Wolf Memorandum purporting to announce substantive "interim" changes to the DACA program while the Defendants consider "whether the DACA policy should be maintained, rescinded or modified."  ECF No. 102-1 at 6.  The changes included the denial of all initial requests for DACA status, the denial of all but "exceptional" requests for advance parole, and limiting DACA renewals to one year rather than two.  *Id*.  The Wolf Memorandum stated that Defendants were making these significant substantive changes to the pre-September 5, 2017 DACA program prior to conducting a full evaluation.  *E.g., id.* at 2 (" I am . . . making certain immediate changes to the DACA policy <u>to facilitate my thorough consideration of how to address</u> *DACA* in light of the Supreme Court's decision.") (emphasis added); *id*. at 6 (describing "Changes Pending Reconsideration of the DACA Policy").

The Wolf Memorandum did not address the affirmatively misleading statements that DHS and its component agencies posted on their websites for six weeks following the Supreme Court decision nor their obligations under the Fourth Circuit's mandate or the July 17 Order.  Instead, the Wolf Memorandum made clear that the changes would apply retroactively to compel the denial of applications for DACA and advance parole that had been received since the Supreme Court decision.  *Id*. at 8 (declaring "I have determined that these changes should apply both to DACA and advance parole requests submitted after the issuance of this memorandum <u>and requests that are currently pending before the agency</u> . . . all pending and future requests should be treated in the same manner, rather than be subject to differential treatment depending on the fortuity of when DHS received the request") (emphasis added).

The Wolf Memorandum confirmed that Defendants had not been complying with the Courts' Orders to return DACA "to its pre-September 5, 2017, status." *Id*. at 7 ("Since the issuance of the Supreme Court's decision, DHS has, on an interim basis, generally held properly submitted initial requests for DACA in anticipation of potential policy changes.  Since July 24, DHS has likewise, on an interim basis, held all requests for advanced parole from current DACA recipients.").  The Wolf Memorandum also confirmed Defendants have no intention of complying with the Courts' Orders to return DACA "to its pre-September 5, 2017, status" while they undertake the necessary steps to reconsider the DACA policy.  *Id*. at 6 ("In accordance with the Supreme Court decision, I am determined to give careful consideration to . . . the DACA policy. . . . *In the meantime*, . . . I have determined that some changes should *immediately* be made to the policy . . . .").  The Wolf Memorandum also acknowledged that its purpose and purported effect is to enable Defendants to grant themselves an extra-judicial stay of the Fourth Circuit's mandate and this Court's July 17 Order by placing the DACA program into the status it held *prior to* the Courts' Orders.  *See id*. at 7 ("It makes sense to continue [the DACA program status prior to the Courts' final decisions] while I consider whether to rescind or revise the policy.").

In a press briefing discussing the release of the Wolf Memorandum, Defendants made clear their unambiguous intent to defy the Courts' Orders.  A "senior administration official" who spoke in connection with the release of the Wolf Memorandum stated:

- "When the administration next acts on DACA, it will be on the basis of the comprehensive review."

- "These actions will limit the scope of the program while DHS and the administration review."

- When asked how the Wolf Memorandum did not violate this Court's July 17 Order, the official responded, "one judge's orders are not a penultimate here."

- On a direct follow up, the official stated, "we are <u>not</u> going back to the pre-2017 status quo."[5]

- And after a third follow up, the official explained, "Under the judge's order, absent any intervening action from this administration, we would be back to a pre-2017 context. This memo is an intervening action . . . ."[6]

Ex. C at 2–6 (Transcript of Background Press Call by Senior Administration Officials on the Administration's Actions on the DACA Program, July 28, 2020) (emphasis added).

The same day the Wolf Memorandum was announced, DHS updated their website to publicize these immediate changes.[7]  This stands in stark contrast to Defendants' refusal to update their websites following the Supreme Court decision, and their representations to this Court five weeks after the Supreme Court decision when questioned about their failure to correct misleading information on their websites.  July 24, 2020 Hr'g Tr. at 15–16, 19, 22, 28–29.

Since the issuance of the Wolf Memorandum, senior DHS officials have continued to make false statements about their compliance with the Fourth Circuit's mandate and the July 17 Order. For example:

- The day after issuing the Wolf Memorandum, Acting Deputy Secretary Cuccinelli stated in response to a question, "why not follow the law?",  "Well, of course, we are following the law . . . and the Maryland ruling was last Friday.  And <u>following that Maryland ruling</u>, we took interim action."[8]

---

[5] The follow up question asked, "how do you reconcile not accepting new applications when a federal judge has ordered that you do so?"  Ex. C at 5–6.

[6] The third follow up question asked, "It seems pretty clear from the Maryland federal judge's decision that it restored DACA to its pre-termination status. I don't understand your explanation. Forgive me, but doesn't that status exist today in the law?  And shouldn't you be accepting new applications?"  *Id*. at 6.

[7] Department of Homeland Security, Department of Homeland Security Will Reject Initial Requests for DACA As It Weighs Future of the Program (July 28, 2020), https://www.dhs.gov/news/2020/07/28/department-homeland-security-will-reject-initial-requests-daca-it-weighs-future.

[8] What Does the Trump Administration's Decision Mean for DACA Recipients?, NPR, July 29, 2020, https://www.npr.org/2020/07/29/896605451/what-does-the-trump-administrations-decision-mean-for-daca-recipients, (emphasis added).

- Testifying before Congress the same day, USCIS Deputy Director for Policy Joseph Edlow stated, "what we did at that point was begin to hold new applications while we continued to talk with our attorneys, both within the department, as well as with the Department of Justice, to figure out what the next steps would be.  But there has not been an opportunity to apply for an initial DACA or have that processed, since 2017-2018."[9]

- Deputy Director Edlow also testified "following the Supreme Court . . . we stopped immediately, stopped rejecting new applications.  We were holding them.  So we were--we had them ready to go should--should this decision have come out.  And--and the acting Secretary--if the acting Secretary had directed us to accept."  Ex. D at 16.

- On July 30, 2020, Acting Deputy Secretary Cuccinelli falsely tweeted it was "ridiculous #FakeNews" that DHS had been ordered to restore the DACA program to the pre-September 5, 2017 status quo.[10]

Defendants' actions undermine the rule of law, and have been widely and publicly condemned for defying the courts' mandates.  For example, the *Washington Post* wrote on August 1, 2020 that:

> The Trump administration regards compliance with federal court orders as optional . . . . [A] federal district court judge in July ordered the administration to restore the protections and benefits it tried to abolish when it rescinded [DACA] in 2017.  The administration has refused to comply.[11]

Similarly, in an oversight hearing conducted by the House Judiciary Subcommittee on Immigration and Citizenship on July 29, 2020, Chair Zoe Lofgren stated, "the department was clearly in violation of the Supreme Court decision," and "I would just like to note how distressing it is that at the hearing, which took place 40 days after the Supreme Court's decision was issued, DOJ [] stated that the USCIS had not found the time or resources to change their website."  Ex. D at 10–

---

[9] Transcript of House Judiciary Subcommittee on Immigration and Citizenship Hearing on Citizenship and Immigration Services Oversight, July 29, 2020, Ex. D at 12–13.

[10] Acting Deputy Secretary Ken Cuccinelli (@HomelandKen), TWITTER (July 30, 2020), https://twitter.com/homelandken/status/1288910645161799682?s=11.

[11] *Trump didn't like rulings on DACA.  So he's defying them*, WASHINGTON POST (Aug. 1, 2020), https://www.washingtonpost.com/opinions/trump-didnt-like-rulings-on-daca-so-hes-defying-them/2020/07/31/36458e06-d1e1-11ea-9038-af089b63ac21_story.html.

11. Similar sentiments were expressed by Representative Pramila Jayapal.  *Id*. at 18 ("This administration does not get to decide which orders it complies with or not.  It does not get to decide that it can put up a statement that says the Supreme Court decision was--that you don't agree with it, but you don't actually comply.").  And at least one legal commentator noted that Defendants' actions "flout[ed] a decision by the Supreme Court, effectively rejecting the judiciary's authority to say what the law is."[12]

## III.    ARGUMENT

A federal court's power to find and punish contempt is inherent as well as statutory. *Rainbow School, Inc. v. Rainbow Early Education Holding LLC*, 887 F.3d 610, 617 (4th Cir. 2018) ("[t]o ensure compliance with its orders, a district court has the inherent authority to hold parties in civil contempt."); 18 U.S.C. 401 ("A court of the United States shall have power to punish . . . disobedience or resistance to its lawful writ, process, order, rule, decree, or command").  The purpose of civil contempt is twofold: to coerce compliance with court orders, and also to compensate the complainant for losses associated with such noncompliance.  *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995).  A party may be held in civil contempt when there is clear and convincing evidence that the party alleged to be in contempt had actual or constructive knowledge of a ruling in favor of the movant, that their conduct violated the ruling, and that movant was harmed by the noncompliance.  *Rainbow School, Inc.*, 887 F.3d at 617 (*quoting United States v. Ali*, 874 F.3d 825, 831 (4th Cir. 2017)).

Defendants are legally required to follow the Fourth Circuit's mandate, which "is controlling as to matters within its compass."  *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993).

---

[12] Mark Joseph Stern, *Trump is Now Openly Defying the Supreme Court*, SLATE (July 28, 2020, 5:20 PM), https://slate.com/news-and-politics/2020/07/daca-donald-trump-supreme-court.html.

This "mandate rule" applies not just to lower courts but also to administrative agencies and requires them—including Defendants—to "'implement both the letter and spirit of the . . . mandate." *Mangum v. Hallembaek*, 910 F.3d 770, 776, 778 (4th Cir. 2018) (quoting *Bell*, 5 F.3d at 66) (alteration added) (finding that an agency's "actions on remand were directly contrary" to the Fourth Circuit's holding).  There is no question that the Defendants were aware of the Courts' Orders.  In failing to *ever* return the DACA program to its pre-September 5, 2017, status, Defendants violated the Fourth Circuit's mandate as well as this Court's July 17 Order.  In so doing, they willfully deprived Plaintiffs' of long-sought relief to which they are unquestionably entitled.

A.      **The Duke Memorandum Was Vacated, Rendering it Null and Void, and Thus the DACA Program Returned to the Status Quo Ante.**

The Courts' Orders vacated the Duke Memorandum rescinding the DACA program. *Regents*, 140 S. Ct. at 1916; *Casa De Md.*, 924 F.3d at 706; Order, ECF No. 97 at 3.  The effect of vacating an agency decision is to render the offending agency action null and void. *Action on Smoking and Health v. C.A.B.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (quoting 91 C.J.S. Vacate (1955) ("to vacate. . .means to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of not authority or validity; to set aside.")).  The parties' positions return to the status quo prior to the issuance of the action vacated. *Id.* ("Thus, by vacating or rescinding the rescissions . . . , the judgment of this court had the effect of reinstating the rules previously in force.").  Agency actions taken pursuant to the vacated agency action, like the rejection of initial requests for DACA, are void. *See American Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510 (D.C. Cir. 2020) ("vacatur would mean that [actions pursuant to the vacated rule were] erroneous").

12

Defendants acknowledged that the issuance of the Fourth Circuit's mandate would require them to accept and consider initial requests for DACA and applications for advance parole.  Mot. to Stay Mandate at 9–10, *Casa De Md.*, No. 18-1521 (4th Cir. May 31, 2019), ECF No. 64 ("[B]ecause it vacates the decision to rescind the DACA policy in its entirety, it requires the government to continue fully the DACA policy, including accepting and adjudicating requests from individuals who never previously received DACA and accepting applications for advance parole under standards associated with the DACA policy.") (emphasis added).  *See also* Ex. A (Department of Justice statement that the stay of the Fourth Circuit mandate "would only have effect as to . . . new applications and advance parole").

### B.     Defendants are Required to Administer the Status Quo Ante.

The vacatur of the Duke Memorandum requires restoration of the status quo ante, which means Defendants are required to administer the pre-rescission DACA program in full.  *See Action on Smoking and Health*, 713 F.2d at 798 (noting the effect of vacatur was to "reinstate the protections" of the prior rule which "cannot again be revoked" without a lawful rulemaking process).  Furthermore, Defendants cannot evade compliance with a mandate by using an interim action to create a *de facto* stay.  *International Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) (holding plaintiffs' challenge to "a final 'emergency' rule suspending the effect of [the D.C. Circuit's] decision 'for a period of 120 days'" should be treated as a motion to compel compliance and not a motion to enjoin a new action).  When an agency "has simply reimplemented" the same action it "is the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded by parties to a court proceeding."  *Id*. at 922–23.

There is nothing in *Regents* or the other Courts' Orders  that relieves Defendants of their obligation to restore the status quo ante.  Moreover, the Supreme Court made clear that, if

Defendants seek to rescind or modify DACA, they must *first* complete a lawful, thorough consideration of the DACA program pursuant to the procedures outlined by the Court. "This is not the case for cutting corners . . . ." *Regents*, 140 S. Ct. at 1909–10. This Court's July 17 Order reaffirmed that point by ***enjoining*** Defendants from taking any action to rescind DACA that is not compliant with the law. ECF No. 97 at 3.

Defendants are well aware of their legal obligations. As they have stated, they must "restart the DACA process in accordance with #scotus's ruling"[13] and complete "a comprehensive review of the DACA program." Ex. C at 2. This review, which "will have to take time," *id.*, is still incomplete.

Despite the incomplete and ongoing nature of the review, the Wolf Memorandum purports to make "certain immediate changes to the DACA policy." ECF No. 102-1 at 2. It also claims that "[i]n accordance with the Supreme Court's decision, [Acting Secretary Wolf is] determined to give careful consideration to whether the DACA policy should be maintained, rescinded, or modified." *Id.* at 6. This process is not turning "square corners." *Regents*, 140 S. Ct. at 1909. These "immediate changes" cannot be squared with "careful consideration" "in accordance with the Supreme Court's decision."[14] The Wolf Memorandum purports to reinstate critical elements of the Duke Memorandum without having fully considered the issues identified in *Regents*. Rather than return to and maintain the status quo ante until the DACA review process is completed, as the Courts' Orders require, Defendants have rescinded DACA again for new applicants and advance parole applicants prior to completing the required review. These are precisely the types of changes

---

[13] Acting Deputy Secretary Ken Cuccinelli (@HomelandKen), Twitter (June 19, 2020, 1:42 PM), https://twitter.com/HomelandKen/status/1274034795576791046.

[14] For example, the Wolf Memorandum addresses neither the forbearance issue nor the impact of the Fourth Circuit's mandate on the scope of the Acting Secretary's discretionary authority.

that the Supreme Court held must go through a full consideration of all the relevant factors, and

that this Court enjoined on July 17, 2020. *See Mangum*, 910 F.3d at 776 (remanding for failure to

"evaluate the relevant factors" as required by the Fourth Circuit's prior opinion and mandate).

### C. Defendants Knew Their Actions Did Not Comply With the Requirement to Restore the DACA Program to the Status Quo Ante.

Through their statements and representations, it is indisputable Defendants knew (i) the

effect of the Courts' Orders was to restore the status quo ante, and (ii) that restoration included

consideration of initial requests for DACA, consideration of advance parole applications, and

maintenance of the two-year renewal period available to existing DACA recipients.  There is also

no question that Defendants willfully ignored their obligation to restore the status quo ante in

defiance of the Fourth Circuit's mandate and the July 17 Order.

Defendants immediately issued public statements criticizing the Supreme Court, but they

took no action to restore the DACA program as it existed prior to September 5, 2017.  They

similarly continued to post misleading information on their websites about DACA benefits being

unavailable some 40 days after the Supreme Court decision, and continue to make misleading

statements to the public about their obligations under the Courts' Orders.  The directive from those

decisions is clear:  as of June 18, 2020, the date the Supreme Court affirmed the District Court for

the District of Columbia's vacatur of the Duke Memorandum—and no later than June 30, 2020,

when the Fourth Circuit's mandate became effective—the Defendants were under a judicial

obligation to fully restore the DACA program as it existed in practice prior to the issuance of the

Duke Memorandum.  This included considering initial requests for DACA as well as applications

for advance parole from current DACA recipients.[15]

---

[15] Existing DACA recipients were also permitted 2-year renewals of that status with coterminous
employment authorization.

As Deputy Director Edlow testified to Congress following *Regents*, Defendants "immediately" began "to hold new applications while we continued to talk." Ex. D at 12–13. USCIS began holding applications in anticipation of the decision of the Acting Secretary (*i.e.*, the Wolf Memorandum). *Id.* at 16 ("We were holding them. So we were--we had them ready to go should--should this decision have come out."). Thus, rather than implement the status quo ante, the Defendants surreptitiously rejected or "held" initial requests and advance parole applications. Such conduct is a clear effort to evade court-ordered obligations.

With the release of the Wolf Memorandum, Defendants' rejected all initial requests for DACA that had been held in abeyance "[s]ince the issuance of the Supreme Court's decision" as well as pending requests for advance parole. ECF No. 102-1 at 8. This decision constitutes clear and convincing evidence that Defendants violated the Courts' Orders by retroactively applying the changes purportedly implemented by the Wolf Memorandum to requests received during a period when the DACA program had been ordered restored, by operation of law, to its pre-September 5, 2017, status.

In addition, for the six weeks between the Supreme Court's decision on June 18, 2020 and the Wolf Memorandum on July 28, 2020, the Defendants did nothing to update their public disclosures about DACA. Instead they deceived the public by providing incorrect information about the status of the DACA program and whether initial requests for DACA status or advance parole applications were eligible for consideration. *See* ECF Nos. 96, 99. As the Department of Justice stated at the July 24 hearing, the "websites run by DHS and USCIS right now, frankly, have some outdated and inaccurate information with respect to the current status quo with respect to DACA. That is unfortunate . .. we all agree [there] is a regrettable lack of clarity." July 24,

16

2020 Hr'g Tr. at 16, 20.  It bears emphasis that Defendants updated their websites on July 28, 2020 to reflect the release of the Wolf Memorandum earlier that day.

In light of the Defendants' statements regarding their intentions (*i.e.*, "we are not going back to the pre-2017 status quo"), Ex. C at 6, and capabilities (*i.e.*, near instantaneous publicizing of Defendants' objections to *Regents* on June 18, 2020 and the Wolf Memorandum on July 28, 2020), this Court should conclude Defendants deliberately misinformed the public to deter individuals from applying for relief under the judicially-restored DACA program.

In summary, Defendants' actions clearly and convincingly demonstrated a knowledge of their obligations under the Courts' Orders, as well as their intention to violate the "the letter and spirit of the … mandate" and the other Courts' Orders.  *Mangum v. Hallembaek*, 910 F.3d 770, 776, 778.

**D.      Plaintiffs and the Public Have Been Harmed by Defendants' Noncompliance.**

Defendants' noncompliance with the Courts' Orders have harmed many people.  Individual Plaintiff A.M., who is eligible for DACA status, has been prevented from submitting an initial request for DACA status.  ECF No. 1 ¶ 38.  And he is not alone.  Numerous members of Plaintiff organizations and other individuals are similarly situated.  Some submitted initial requests for DACA following *Regents* and were summarily denied or held in abeyance.  *See* ECF No. 102-1 at 7.  Still others requested advance parole and, as the Wolf Memorandum admits, many requests from DACA recipients "were rejected," as "[p]rior to July 24, DHS's treatment of advance parole requests from DACA recipients varied."  *See id.* at 8, n.1.  Although DHS has never explained why treatment varied, the fact remains, Defendants failed to review advance parole requests from DACA recipients under the parameters of the DACA program as it existed prior to September 5, 2017.  That DHS now permits rejected requestors to submit a request to "be adjudicated on the

[new] terms set forth in this memorandum," *id.*, offers no relief and instead merely highlights the impropriety of their actions.

Critically, many members of the public and members of the organizational Plaintiffs were deterred from applying in reliance on Defendants' false and misleading statements that initial requests for DACA were not being considered by the agency.  *See* ECF No. 96 at 2, Ex. A.  Current DACA recipients were likewise deterred from submitting advance parole applications and still others are likely currently deterred by the combination of the steep application fee[16] and Defendants' vague exception for "exceptional circumstances."  *See* ECF No. 102-1 at 7.  *Regents* concluded nearly three years of litigation with a finding that the Defendants' actions, including their summary denial of initial applications for DACA and requests for advance parole, were unlawful.  Plaintiffs eligible for either form of relief have been harmed because their access to the DACA program as it existed prior to September 5, 2017, has been fully foreclosed by Defendants' willful noncompliance.

Plaintiffs and the public have been further injured by Defendants' refusal to abide by the rule of law.  The Defendants refusal to "turn square corners in dealing with the people," *Regents*, 140 S. Ct. at 1909,  warrants judicial censure.  The Defendants should be held in contempt.

### E.    Contempt and Compelled Compliance are Appropriate Here Because the Government Has Knowingly and Intentionally Defied Court Decrees.

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."  *Shillitani v. United States,* 384 U.S. 364, 370 (1966).  "Contempt orders have been levied against executive branch officials and agencies without even so much as a hint that such orders offend separation of powers."  *In re Kessler*, 100 F.3d 1015,

---

[16] The filing fee for an advance parole application is $575.  USCIS, *I-131, Application for Travel Document* (June 29, 2020), https://www.uscis.gov/i-131.

1017 (D.C. Cir. 1996), *as amended* (Jan. 17, 1997) (citations omitted).  The use of civil contempt is particularly appropriate when, as here, a court is addressing violations of the APA.  *South Carolina v. United States*, 907 F.3d 742, 756 (4th Cir. 2018) ("The plain text of § 706 shows that a reviewing court lacks discretion when faced with unlawful agency inaction. Again, § 706(1) provides that: 'The reviewing court *shall*— (1) compel agency action unlawfully withheld or unreasonably delayed ....'. And 'the word "shall" usually creates a mandate,' indicating that 'the district court has some nondiscretionary duty to perform.'") (citation omitted).  Furthermore, an agency's claims of "good faith" does not provide an exception to compliance with a court order.  *See, e.g.*, *Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535, 539 (N.D. Cal. 2019) ("[T]here is no good faith exception to the requirement of obedience to a court order.") (citation omitted).

Defendants did not innocently avoid their responsibilities to provide relief to the prevailing parties.  Instead, they intentionally refused to comply and obfuscated their non-compliance.  In granting themselves an undisclosed, extra-judicial stay, Defendants have avoided the scrutiny attendant to properly requested relief from final judgments.  *Cf. National Venture Capital Ass'n. v. Duke*, 291 F. Supp. 3d 5, 21 (D.D.C. 2017) (finding a "claim that a stay is necessary to save expenses and avoid reliance interests as [DHS] fashions a new Rule" does not justify a stay).  In effect, Defendants have dared this Court (or any other) to enforce their orders vacating the Duke Memorandum and restoring DACA to the status quo ante.

Defendants' inequitable conduct is deserving of a finding of contempt and Plaintiffs are deserving of the relief ordered by the Supreme Court, the Fourth Circuit, and this Court.  Furthermore, enforcement of the Fourth Circuit's unambiguous mandate, "is an interest that the District Court [is] empowered to protect."  *Int'l Ladies' Garment Workers' Union*, 733 F.2d at 922.  It is particularly egregious that Defendants opted to mislead the public to deter potential

19

applicants from taking advantage of the reinstated DACA program.  Defendants cannot and should

not succeed here in declaring themselves accountable to no one but themselves.  The rule of law

and separation of powers requires that Defendants not just comply with Congress's commands in

the form of the APA, but also with the judicial branch, including both the Fourth Circuit mandate

and this Court's July 17 Order.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an order to

show cause why defendants should not be held in contempt or, in the alternative, to compel

compliance with the Fourth Circuit mandate to restore DACA to its pre-September 5, 2017, status,

and grant any further relief it deems appropriate.


Dated: August 14, 2020                                          Respectfully submitted,


_____/s/_____

Elizabeth J. Bower (*pro hac vice*)                    John A. Freedman (D. Md. 20276)
Kevin B. Clark (D. Md. 04771)                           Ronald A. Schechter (*pro hac vice*)
Kyle A. Mathews (*pro hac vice*)                       Nancy L. Perkins (*pro hac vice*)
Willkie Farr & Gallagher LLP                            Emily Dillingham (*pro hac vice*)
1875 K Street, NW                                       Arnold & Porter Kaye Scholer LLP
Washington, DC 20006-1238                               601 Massachusetts Ave., NW
(202) 303-1000                                          Washington, DC  20001-3743
EBower@willkie.com                                      (202) 942-5000
                                                        John.Freedman@arnoldporter.com

Dennis A. Corkery (D. Md. 19076)
Washington Lawyers' Committee
For Civil Rights And Urban Affairs
700 14th Street NW, Suite 400                           *Attorneys for Plaintiffs*
Washington, DC 20005
(202) 319-1000
dennis_corkery@washlaw.org

CERTIFICATE OF SERIVCE

I hereby certify that on August 14, 2020, a copy of the foregoing was served on all

counsel of record via the Court's CM/ECF system.


_____*/s/*_____

Elizabeth J. Bower