## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CASA DE MARYLAND, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Civil No. PWG-17-2942 |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## MOTION FOR ATTORNEY'S FEES AND COSTS

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

GALEN N. THORP (D. Md. 813831)
  Senior Trial Counsel
STEPHEN M. PEZZI (D. Md. 813691)
CORMAC A. EARLY
  Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

BACKGROUND..................................................................................................4

    I.   THE DACA POLICY..................................................................................4

    II.  *REGENTS* AND RELATED LITIGATION ..........................................4

    III. THIS LITIGATION ....................................................................................6

ARGUMENT .......................................................................................................9

    I.    **PLAINTIFFS' FEE PETITION IS UNTIMELY.**.................................9

        a.  The Court ended litigation on the merits on July 17, 2020. .....................10

        b.  Here, EAJA, in conjunction  with the Federal Rules, required any fee
            application to be filed within 240 days of the Court's July 17, 2020 Order.............13

        c.  Plaintiffs' untimely fee application does not warrant equitable tolling. ...................14

    II.  **PLAINTIFFS ARE NOT ELIGIBLE FOR OR ENTITLED TO ANY FEES.**.........19

        a.  The position of the United States was substantially justified. ...................................19

        b.  Plaintiffs' counsel brought substantially duplicative litigation. ...............................22

    **III.PLAINTIFFS' FEE REQUEST IS UNREASONABLE**...........................................24

CONCLUSION....................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Al-Harbi v. INS*,
284 F.3d 1080 (9th Cir. 2002) ............................................................11

*Allen v. Comm'r of Soc. Sec.*,
Case No. 10-0068, 2012 WL 1596661 (S.D.N.Y. Apr. 27, 2012);
*report and recommendation adopted*, 2013 WL 6331727 (S.D.N.Y. Dec. 5, 2013)...............16

*Am. Ass'n of Pol. Consultants, Inc. v. Wilkinson*,
518 F. Supp. 3d 881 (E.D.N.C. 2021) ..................................................20

*Am. Petroleum Inst. v. EPA*,
72 F.3d 907 (D.C. Cir. 1996)................................................................24

*Ardestani v. INS*,
502 U.S. 129 (1991)............................................................................14

*Arizona v. United States*,
567 U.S. 387 (2012)..............................................................................4

*Arulampalam v. Gonzales*,
399 F.3d 1087 (9th Cir. 2005) ............................................................14

*Baez v. Comm'r of Social Sec.*,
760 F. App'x 851 (11th Cir. 2019)......................................................14

*Barrette Outdoor Living, Inc. v. Iron World Mfg., LLC*,
Case No. SAG-19-3027, 2020 WL 4133638 (D. Md. July 17, 2020)....................17

*Batalla Vidal v. Nielsen*,
279 F. Supp. 3d 401 (E.D.N.Y. 2018)..............................................5, 23

*Brenstein ex re. Bernstein v. Menard*,
728 F.2d 252 (4th Cir. 1984) ..............................................................12

*Brummer v. Bd. of Adjustment of City of Asheville*,
911 F.2d 720 (4th Cir. 1990) ..............................................................11

*Casa de Maryland v. DHS*,
924 F.3d 684 (4th Cir. 2019) ..........................................................7, 21

*Coley v. Wilkie*,
   32 Vet. App. 284 (2020) ...................................................................14

*Crawford v. Sullivan*,
   935 F.2d 655 (4th Cir. 1991) .................................................*passim*

*Cunningham v. Comm'r of Internal Revenue*,
   716 F. App'x 182 (4th Cir. 2018) ......................................................15

*CX Reinsurance Co. Ltd. v. Johnson*,
   977 F.3d 306 (4th Cir. 2020) ............................................................13

*DHS v. Regents of the Univ. of California*,
   140 S. Ct. 1891 (2020) .......................................................... 1, 5, 6, 21

*Edmonson v. Eagle Nat'l Bank*,
   922 F.3d 535 (4th Cir. 2019) ............................................................15

*Fair Hous. Council of Greater Wash. v. Landow*,
   999 F.2d 92 (4th Cir. 1993) ..............................................................24

*Fernandes v. Craine*,
   538 F. App'x 274 (4th Cir. 2013) ......................................................17

*Grendel's Den, Inc. v. Larkin*,
   749 F.2d 945 (1st Cir. 1984) .............................................................25

*Griffith v. Comm'r of Soc. Sec.*,
   987 F.3d 556 (6th Cir. 2021) ............................................................20

*Hardt v. Reliance Standard Life Ins. Co.*,
   560 U.S. 242 (2010) ..........................................................................22

*Harris v. Hutchinson*,
   209 F.3d 325 (4th Cir. 2000) ............................................................15

*Havird Oil Co. v. Marathon Oil Co.*,
   149 F.3d 283 (4th Cir. 1998) ............................................................11

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................ 3

*Huichan v. Barnhart*,
   Case No. 05-C-0268-C, 2006 WL 6087660 (W.D. Wis. Oct. 10, 2006) ................................14

*In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*,
   751 F.3d 629 (D.C. Cir. 2014) ...........................................................................20

*In re Olson*,
   884 F.2d 1415 (D.C. Cir. 1989) ..........................................................................24

*Ira T. v. Comm'r of Social Sec.*,
   Case No. GJH-17-1895, 2019 WL 948351 (D. Md. Feb. 27, 2019) .........................14

*Irwin v. Dep't of Veterans Affairs*,
   498 U.S. 89 (1990) .....................................................................................15, 17

*Kennecott Corp. v. EPA*,
   804 F.2d 763 (D.C. Cir. 1986) ............................................................................25

*Life Tech. Corp. v. Life Tech. Corp.*,
   Case No. TDC-10-3527, 2020 WL 2526579 (D. Md. May 18, 2020) .......................11

*Massie v. Astrue*,
   Case No. 3:06-0689, 2009 WL 1544003 (S.D. W. Va. May 29, 2009) .....................16

*Matousek v. Johnston*,
   776 F. App'x 180 (4th Cir. 2019) ........................................................................11

*Melkonyan v. Sullivan*,
   501 U.S. 89 (1991) .........................................................................................9, 10

*Menominee Indian Tribe of Wisconsin v. United States*,
   577 U.S. 250 (2016) .....................................................................................15, 16

*Meyer v. Colvin*,
   754 F.3d 251 (4th Cir. 2014) .........................................................................19, 20

*Michigan v. EPA*,
   254 F.3d 1087 (D.C. Cir. 2001) ..........................................................................27

*Myers v. Sullivan*,
   916 F.2d 659 (11th Cir. 1990) ............................................................................11

*N. Carolina All. for Transp. Reform, Inc. v. U.S. Dep't of Transp.*,
   104 F. Supp. 2d 599 (M.D.N.C. 2000) .................................................................17

*NAACP v. Trump*,
   298 F. Supp. 3d 209 (D.D.C. 2018);
   *denying reconsideration*, 315 F. Supp. 3d 457 (D.D.C. 2018) ...........................5, 23

*Oliveira v. United States*,
  827 F.2d 735 (Fed. Cir. 1987) ...............................................................................28

*Parker v. Astrue*,
  Case No. 3:07-0066, 2009 WL 1543997 (S.D. W. Va. May 29, 2009) ...................16

*Pierce v. Underwood*,
  487 U.S. 552 (1988).........................................................................................19, 20

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
  507 U.S. 380 (1993)................................................................................................17

*Project Vote/Voting for America, Inc. v. Long*,
  887 F. Supp. 2d 704 (E.D. Va. 2012) ....................................................................24

*Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs
& Participating Emps.*,
  571 U.S. 177 (2014)..........................................................................................10, 12

*Regents of the Univ. of Cal. v. DHS*,
  279 F. Supp. 3d 1011 (N.D. Cal. 2018) ...............................................................5, 23

*Reno v. Am. Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999)...............................................................................................4

*Roanoke River Basin Ass'n v. Hudson*,
  991 F.2d 132 (4th Cir. 1993) ....................................................................2, 19, 21, 22

*Role Models America, Inc. v. Brownlee*,
  353 F.3d 962 (D.C. Cir. 2004) ...............................................................24, 27, 28

*Sargent v. Sullivan*,
  941 F.2d 1207 (Table), 1991 WL 160091 (4th Cir. 1991) ....................................10

*Scarborough v. Principi*,
  541 U.S. 401 (2004)................................................................................................14

*Schwartz v. J.J.F. Mgmt. Servs., Inc.*,
  922 F.3d 558 (4th Cir. 2019);
  *aff'd sub nom. Schwartz v. J.J.F. Mgmt. Servs., Inc.*, 922 F.3d 558 (4th Cir. 2019)...............11

*Schwartz v. Rent-A-Wreck of Am.*,
  397 F. Supp. 3d 778 (D. Md. 2018) ......................................................................11

*Smith v. Heckler,*
   739 F.2d 144 (4th Cir. 1984) ........................................................................22

*Texas v. United States,*
   86 F. Supp. 3d 591 (S.D. Tex. 2015); *aff'd,* 787 F.3d 733 (5th Cir. 2015);
   *aff'd,* 809 F.3d 134 (5th Cir. 2015);
   *aff'd, United States v. Texas,* 136 S. Ct. 2271 (2016) ....................................... 1

*Texas v. United States,*
   787 F.3d 733 (5th Cir. 2015) ........................................................................ 1

*Texas v. United States,*
   809 F.3d 134 (5th Cir. 2015) ........................................................................ 1

*Thompson v. E.I. DuPont de Nemours & Co.,*
   76 F.3d 530 (4th Cir. 1996) ........................................................................17

*Thompson v. U.S. Dep't of Housing & Urban Dev.,*
   2001 WL 1636517 (D. Md. Dec. 12, 2001) ....................................................29

*Townsend v. Comm'r of Social Security (Townsend I),*
   415 F.3d 578 (6th Cir. 2005) ........................................................................15

*Townsend v. Soc. Sec. Admin. (Townsend II),*
   486 F.3d 127 (6th Cir. 2007) ................................................................16, 19

*Tyler Business Servs., Inc. v. NLRB,*
   695 F.2d 73 (4th Cir. 1982) ........................................................................22

*United States v. Cambron,*
   406 F. App'x 772 (4th Cir. 2011) .................................................................18

*United States v. Dixon,*
   73 F. App'x 599 (4th Cir. 2003) ...................................................................18

*United States v. Paisley,*
   957 F.2d 1161 (4th Cir. 1992) .....................................................................21

*United States v. Texas,*
   136 S. Ct. 2271 (2016) ................................................................................. 1

*Varhol v. Nat'l R.R. Passenger Corp.,*
   909 F.2d 1557 (7th Cir. 1990) .....................................................................18

*Wilson v. Comm'r of Social Sec.,*
   Case No. 2:05-44, 2008 WL 2308068 (N.D. W. Va. June 4, 2008) .......................16

**Statutes**

28 U.S.C. § 2412 .................................................................................................*passim*

**Rules**

Fed. R. App. Proc. 4 .................................................................................11, 13, 17, 18

Fed. R. Civ. P. 77 ..............................................................................................18

Federal Rule of Civil Procedure 58 ...........................................................................13

**Regulations**

8 C.F.R. § 274a.12(c)(14) ..................................................................................... 4

**INTRODUCTION**

The federal government supports the Deferred Action for Childhood Arrivals (DACA) policy as a lawful exercise of its immigration authorities. But it is indisputable that the legal questions surrounding the creation and the attempted rescission of DACA and related policies have divided judges across the country for much of the last decade. First, in 2015, the U.S. District Court for the Southern District of Texas issued an order enjoining the Deferred Action for Parents of Americans (DAPA) policy, as well as an expanded version of the DACA policy. *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015). That result was affirmed (twice) by the U.S. Court of Appeals for the Fifth Circuit, *Texas v. United States*, 787 F.3d 733 (5th Cir. 2015); *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), and then affirmed without opinion by an equally divided (4-4) Supreme Court, *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam).

In the fall of 2017, after the Attorney General of the United States concluded that DACA would likely meet the same fate in litigation that had already befallen DAPA and expanded DACA, the Department of Homeland Security (DHS) attempted to wind down the DACA policy, which was slated to take effect over a two-and-a-half year period. That effort, too, divided federal courts across the country, including in this case. Ultimately, a closely divided Supreme Court held, in related cases filed elsewhere, that the rescission of DACA was arbitrary and capricious under the Administrative Procedure Act (APA). *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020). Four dissenting justices disagreed with that conclusion, as did (in this case) the late Judge Titus, as well as Judge Richardson of the Fourth Circuit, who dissented from the court of appeals opinion that reversed Judge Titus's opinion in substantial part.

Now, long after final judgment was entered in *this* case challenging the attempted rescission of DACA, Plaintiffs seek attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d).  Plaintiffs' request should be denied.

First, EAJA requires a fee application to be filed "within thirty days of final judgment." 28 U.S.C. § 2412(d)(1)(B).  Even assuming that a court may extend this mandatory statutory deadline, Plaintiffs neither sought nor obtained an order extending their deadline.  And their fee petition was filed more than six months late.  Plaintiffs present no extraordinary reasons for missing a clear statutory deadline.  Instead, their only argument in response is to blame this Court, by pointing to a single passing remark at a status conference, which was not a court order.  But it was *Plaintiffs'* responsibility to ensure that their fee request complied with the timing requirements of the EAJA—not this Court's.  And to the extent there is any doubt on the matter, EAJA's partial waiver of the federal government's sovereign immunity requires it to be strictly construed in favor of the United States.

Second, even if Plaintiffs had filed a timely petition, EAJA only allows an award of fees against the United States if "the position of the United States was not substantially justified."  28 U.S.C. § 2412(d)(1)(B).  Substantial justification is not a high bar: "While the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993).  Here, several judges—including four Supreme Court justices—concluded that the litigation position of the United States was not only reasonable, but meritorious.  To award any fees here, the Court would have to conclude, effectively, that Justice Thomas, Justice Alito, Justice Gorsuch, Justice Kavanaugh, Judge

2

Richardson, and Judge Titus all adopted a legal position that was not just erroneous, but unreasonable. Plaintiffs have not made that extraordinary showing. Instead, they seem to assume—contrary to the text of EAJA and binding precedent interpreting it—that their victory in this case, standing alone, entitles them to fees. It does not.

Third, Plaintiffs must show that "that no 'special circumstances make an award unjust[.]'" *Crawford v. Sullivan*, 935 F.2d 655, 656 (4th Cir. 1991) (quoting 28 U.S.C. § 2412). Here, they cannot make that showing. Substantial litigation challenging the rescission of DACA had already been brought separately in New York, the District of Columbia, and California—and those cases already provided nationwide relief by the time plaintiffs in this case prevailed before the Fourth Circuit, and only those other cases were heard by the Supreme Court. Notably, none of the plaintiffs in those cases have ever requested (let alone obtained) attorney's fees. Under these circumstances, it would be unjust for this group of plaintiffs to be the only group to receive an award of attorney's fees.

Finally, even if Plaintiffs could overcome all of those independent threshold obstacles, under EAJA, courts exclude from the fee calculation "hours that were not reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). At a minimum, Plaintiffs' fee award would need to be substantially reduced to account for Plaintiffs' inadequate billing records, billing for non-compensable activities, overstaffing, and an unreasonable number of hours expended on this procedurally straightforward matter.

Plaintiffs' motion for attorney's fees should be denied in full, or at least in substantial part.

# BACKGROUND

## I.     THE DACA POLICY

On June 15, 2012, then-Secretary of Homeland Security Janet Napolitano announced the policy known as DACA, or Deferred Action for Childhood Arrivals. *See* Admin. R. (AR) 1-3 (Napolitano Mem.), ECF No. 26-1. DACA made deferred action available to "certain young people who were brought to this country as children" in violation of the immigration laws. *Id.* at 1. Following completion of a background check, successful requestors would receive deferred action for a period of two years, subject to renewal. *Id.* at 2-3. The Napolitano Memorandum stated that deferred action pursuant to DACA was an "exercise of prosecutorial discretion." Napolitano Mem. at 1; *see also Reno v. Am. Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999); *see* 8 C.F.R. § 274a.12(c)(14) (describing "deferred action" as "an act of administrative convenience to the government which gives some cases lower priority"). This "broad discretion" is a "principal feature of the removal system." *Arizona v. United States*, 567 U.S. 387, 396 (2012). To that end, the Napolitano Memorandum explained that DACA "confer[red] no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights." Napolitano Mem. at 3.

On September 5, 2017, then-Acting Secretary of Homeland Security Elaine Duke, exercising her authority to establish national immigration policies and priorities, rescinded the Napolitano Memorandum, and decided to wind down DACA. *See* AR 252-56 (Duke Mem.). This and numerous other lawsuits followed, challenging that agency decision on various grounds.

## II.    *REGENTS* AND RELATED LITIGATION

In five related cases challenging the Duke Memorandum, on January 9, 2018, the U.S. District Court for the Northern District of California granted a motion for a preliminary injunction,

and ordered Defendants to "maintain the DACA program on a nationwide basis on the same terms and conditions as were in effect before the rescission on September 5, 2017, including allowing DACA enrollees to renew their enrollments." *Regents of the Univ. of Cal. v. DHS*, 279 F. Supp. 3d 1011, 1048 (N.D. Cal. 2018). Shortly thereafter, a co-extensive preliminary injunction was issued by the court in two cases filed in the U.S. District Court for the Eastern District of New York. *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401 (E.D.N.Y. 2018). And in two cases filed in the U.S. District Court for the District of Columbia, the district court later issued a final judgment vacating the Duke Memorandum in its entirety, *NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018), and also rejected a subsequent agency explanation (the Nielsen Memorandum) on similar grounds, 315 F. Supp. 3d 457 (D.D.C. 2018). With plaintiffs' consent, however, the D.C. district court stayed its order in part pending appeal, so that the practical effect of the D.C. judgment was coextensive with the California and New York preliminary injunctions.

The Supreme Court ultimately granted certiorari (or certiorari before judgment) in all nine of the California, New York, and D.C. DACA-rescission cases. On June 18, 2020, the Supreme Court issued a 5-4 decision setting aside the Duke Memorandum as arbitrary and capricious under the APA, and declining to rely on the Nielsen Memorandum. The majority opinion acknowledged that DHS had the authority to rescind DACA. *Regents*, 140 S. Ct. at 1905. Indeed, it recognized that deciding the best way to move forward with "a program with the breadth of DACA" involves "important policy choices" that are left to DHS, *id.* at 1910, and that DHS has "considerable flexibility in carrying out" this policy-making responsibility, *id.* at 1914. Nonetheless, the Court held that the Duke Memorandum had failed to consider alternatives to rescinding DACA in its entirety and had failed to adequately address the possibility of legitimate reliance interests related

to DACA. *Id.* at 1912, 1913. Accordingly, the Court held that a remand to DHS was appropriate "so that it may consider the problem anew." *Id.* at 1916.

Four justices dissented in relevant part, three of whom wrote separately to express their views. Justice Thomas, in an opinion joined by Justices Alito and Gorsuch, would have held that DACA "was unlawful from its inception," and that its rescission was therefore lawful for that reason alone. *Id.* at 1918-19 (Thomas, J., concurring in part and dissenting in part) ("Today the majority makes the mystifying determination that this rescission of DACA was unlawful."). Justice Alito also wrote separately, expressing similar views. *See id.* at 1932 (Alito, J., concurring in part and dissenting in part) ("DACA was unlawful from the start, and that alone is sufficient to justify its termination. But even if DACA were lawful, we would still have no basis for overturning its rescission."). Finally, Justice Kavanaugh focused on (and disagreed with) the majority's decision to disregard the Nielsen Memorandum as a post-hoc rationalization, and expressed his view that that that memorandum should have been sufficient, standing alone, to justify the agency's decision. *Id.* at 1933 (Kavanaugh, J., concurring in part and dissenting in part) ("Under ordinary application of the arbitrary-and-capricious standard, the Nielsen Memorandum—with its alternative and independent rationales and its discussion of reliance—would pass muster as an explanation for the Executive Branch's action."). Justice Kavanaugh also acknowledged the difficulty of the legal questions at issue. *Id.* at 1935-36 (concurring in part and dissenting in part) ("[A]s to the narrow APA question presented here, I appreciate the Court's careful analysis, but I ultimately disagree with its treatment of the Nielsen Memorandum.").

## III.   THIS LITIGATION

Plaintiffs filed this lawsuit on October 5, 2017, raising claims similar to those that were already pending in the other cases in California, New York, and the District of Columbia. On

March 5, 2018, Judge Titus granted summary judgment to Defendants in substantial part, holding that the Duke Memorandum did not violate the APA or the Constitution.  *See* Order at 1-2 (Mar. 5, 2018), ECF No. 43.  Judge Titus granted judgment in part to Plaintiffs, however, on their estoppel claim regarding the DACA information-sharing policy, and enjoined Defendants from modifying or rescinding that policy.  *See id.*, *as amended by* Order (Mar. 15, 2018) at 1-2, ECF No. 49.

In a 2-1 decision, the Fourth Circuit reversed Judge Titus's arbitrary-and-capricious holding, and vacated DACA's rescission in its entirety.  *Casa de Maryland v. DHS*, 924 F.3d 684, 706 (4th Cir. 2019).  The Fourth Circuit also vacated the information-sharing injunction, and unanimously reversed that portion of the judgment.  *Id.*  The Fourth Circuit, however, stayed its mandate pending the government's petition for certiorari to the Supreme Court, a request that Plaintiffs did not oppose.  *See* Stay of Mandate (May 31, 2019), ECF No. 86.

Judge Richardson dissented in substantial part.  In his view, the case was not justiciable.  *Casa de Maryland*, 924 F.3d at 709 (Richardson, J., concurring in part and dissenting in part) ("Because I find that immigration enforcement decisions are committed to the discretion of the Department, I part with my colleagues and conclude that the rescission of DACA is judicially unreviewable under the APA.").  Although the majority opinion did not address Plaintiffs' constitutional claims, Judge Richardson separately "ha[d] little trouble concluding" that those claims were meritless.  *Id.* at 715 (Richardson, J., concurring in part and dissenting in part).  Finally, as for Plaintiffs' estoppel claim, Judge Richardson concluded that "[t]he Majority is correct that the plaintiffs' estoppel claim against the Department is baseless."  *Id.* at 717-18 (Richardson, J., concurring in part and dissenting in part).

On June 29, 2020, after deciding *Regents*, the Supreme Court denied certiorari in this case. *See* ECF No. 92.  The Fourth Circuit issued its mandate on June 30, 2020.  ECF No. 93.  On July 17, 2020, this Court issued an order implementing the Fourth Circuit's mandate.  Order (July 17, 2020), ECF No. 97.  That Order directed that "[t]he Clerk SHALL CLOSE this case." *Id.* at 4.

Also around that time, Plaintiffs filed a series of letters, which focused on allegations that the government was not complying with some or all of this Court's July 17, 2020 order, the Fourth Circuit's mandate, or the Supreme Court's judgment in *Regents*. *See* ECF No. 96, 99, 108.  One of those three letters, on the last page, also noted Plaintiffs' view that, "[a]s prevailing parties in this litigation, Plaintiffs are entitled to an award of costs and fees under the Equal Access to Justice Act, 28 U.S.C. § 2412."  ECF No. 96, at 3.  The Court then held several status conferences, which (like Plaintiffs' letters) were almost entirely focused on allegations of non-compliance with various court orders.  At one of those status conferences, on the subject of attorney's fees, the Court also said the following: "So, I guess what I want to do is talk about next steps.  I think, Mr. Freeman, it's cart before the horse on attorneys fees, because if there are to be additional matters addressed here, it is only going to come up with an increase in the attorneys fees."  July 24, 2020 Status Conf. Tr., at 35:10-14.  Plaintiffs never moved—neither orally, nor in writing—for an extension of the EAJA's 30-day filing deadline.  And the Court never issued any order extending the EAJA deadline.  At that time, Plaintiffs did not file any motion for attorney's fees.

On August 14, 2020, Plaintiffs moved for an order to show cause as to why Defendants should not be held in contempt.  ECF No. 115.  The Court denied without prejudice Plaintiffs' motion for an order to show cause on February 26, 2021.  ECF No. 129.  Again, even after their show-cause motion was denied, Plaintiffs did not move for attorney's fees.

On October 8, 2021—more than a year after the July 17, 2020 Order implementing the Fourth Circuit's mandate and directing the Clerk to close this case—Plaintiffs moved for attorney's fees. ECF No. 142 ("Pls.' Mot."). Plaintiffs now seek an award of $418,197.14 in fees and $13,347.37 in costs. Defendants now oppose that motion, and respectfully submit that it should be denied in its entirety, or at least in substantial part.

## ARGUMENT

"Eligibility for an award of fees under the EAJA requires: (1) that the claimant be a 'prevailing party'; (2) that the government's position was not 'substantially justified'; (3) that no 'special circumstances make an award unjust'; and, (4) that the fee application be submitted to the court within 30 days of final judgment and be supported by an itemized statement." *Crawford*, 935 F.2d at 656 (citation omitted). Defendants do not dispute that Plaintiffs are prevailing parties for purposes of EAJA. But Plaintiffs cannot satisfy any of the remaining three of EAJA's four independent requirements, and their motion should therefore be denied in its entirety. In the alternative, the amount of fees requested is unreasonable, and should therefore (at a minimum) be reduced significantly to account for Plaintiffs' inadequate billing records, billing for non-compensable activities, overstaffing, and an unreasonable number of hours expended.

## I.    PLAINTIFFS' FEE PETITION IS UNTIMELY.

As a threshold matter, Plaintiffs' fee application is untimely. Plaintiffs acknowledge that EAJA requires a fee application to be submitted "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B); Pls.' Mot. at 11. For purposes of EAJA, "final judgment" occurs when the time to take an appeal expires after the district court's judgment. *See* 28 U.S.C. § 2412(d)(2)(G) (defining "final judgment" as "a judgment that is final and not appealable, and includes an order of settlement"); *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991) (explaining that

the 30-day period for seeking fees under EAJA starts "after the time for taking an appeal from the district court judgment ha[s] expired"); *Sargent v. Sullivan*, 941 F.2d 1207 (Table), 1991 WL 160091, at *2 (4th Cir. 1991) (same). In this case, the Court's July 17, 2020 judgment became "not appealable" no later than February 12, 2021 (as calculated below, *see infra* Arg. § I.b), making Plaintiffs' fee application due March 14, 2021—more than six months before Plaintiffs' motion.

      **a.**      **The Court ended litigation on the merits on July 17, 2020.**

On July 17, 2020, the Court concluded that "all of the issues in this case have been determined" by the Judgment of the Fourth Circuit. Order at 3, ECF No. 97. Accordingly, the Court disposed of each of Plaintiffs' claims, granting relief and ordering that "[t]he Clerk SHALL CLOSE this case." *Id.* at 3-4. The Fourth Circuit's decision had addressed Judge Titus's prior grant of summary judgment, *see* Amended Order, ECF No. 49 (directing Clerk of Court "to CLOSE this case"); and the Fourth Circuit's mandate came the day after the Supreme Court denied certiorari. *See* ECF Nos. 92, 93. For these reasons, the July 17, 2020 Order ended the litigation on the merits and terminated the action, *i.e.*, it served as the Court's judgment in the case. *See Melkonyan*, 501 U.S. at 96 (holding that "final judgment" under EAJA "means a judgment rendered by a court that terminates the civil action for which EAJA fees may be received"); *cf. Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 185 (2014) ("In the ordinary course a 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.") (citation omitted).

Plaintiffs argue that "no final judgment has yet been entered in this case" because (1) they litigated "the Government's compliance with the Fourth Circuit mandate and the July 17, 2020 order," Pls.' Mot. at 12; and (2) they notified the Court that they wished to seek attorney's fees and costs under EAJA and the Court expressed a preference to "get the substantive matters

10

straightened out . . . before we turn to . . . attorneys' fees." *Id.* at 11-12 (quoting Status Conf. Tr. 35:10-14, July 24, 2020). Neither of these issues affected the timing of the entry of final judgment.

First, litigation about compliance with a court's judgment does not affect the judgment's finality. *See, e.g., Matousek v. Johnston*, 776 F. App'x 180 (4th Cir. 2019) (describing post-judgment contempt proceedings); *Life Tech. Corp. v. Life Tech. Corp.*, No. TDC-10-3527, 2020 WL 2526579, at *2 (D. Md. May 18, 2020) (same); *Schwartz v. Rent-A-Wreck of Am.*, 397 F. Supp. 3d 778, 779 (D. Md. 2018) (same), *aff'd sub nom. Schwartz v. J.J.F. Mgmt. Servs., Inc.*, 922 F.3d 558 (4th Cir. 2019). Instead, contempt proceedings can lead to an ancillary order that is separately appealable. *See, e.g., Brummer v. Bd. of Adjustment of City of Asheville*, 911 F.2d 720 (4th Cir. 1990) (Table); *Schwartz*, 397 F. Supp. 3d at 779. The Court's characterization of the compliance question as "additional matters" or "substantive matters," Pls.' Mot. at 12 (quoting Status Conf. Tr. 35:10-14, July 24, 2020), simply refers to these collateral, post-judgment issues. Indeed, Plaintiffs' show-cause motion is not among the sort of post-judgment motions that toll the time to appeal. *See* Fed. R. App. Proc. 4(a)(4)(A); *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 288 (4th Cir. 1998). Nothing the Court said or did after July 17, 2020 altered the fact that the Court had already disposed of the merits and ordered the case closed. *See, e.g.*, Letter Order at 1, ECF No. 129 (denying contempt motion without prejudice while reiterating that the Court's "July 17, 2020 order dismissed the Plaintiff's constitutional claims in this case and directed the clerk to close the case").[1]

---

[1] Plaintiffs also cite out-of-circuit caselaw concluding that final judgment under EAJA "designat[es] the date on which a party's case has met its final demise, such that there is no longer any possibility that the district court's judgment is open to attack." *Al-Harbi v. INS*, 284 F.3d 1080, 1084 (9th Cir. 2002) (quoting *Myers v. Sullivan*, 916 F.2d 659, 669 (11th Cir. 1990)). This line of cases supports Defendants' position because the contempt issue was entirely collateral—it did not leave "the district court's judgment . . . open to attack." *Al-Harbi*, 284 F.3d at 1084 (addressing whether "final judgment" required exhaustion of certiorari deadlines).

Second, notice of an intent to seek fees under EAJA could not alter the finality of the Court's judgment.  It is well established that judgments are final for purposes of appeal where attorney's fees have not yet been resolved.  *See, e.g.*, *Ray Haluch Gravel Co.*, 571 U.S. at 179-84; *Bernstein ex re. Bernstein v. Menard*, 728 F.2d 252, 253 (4th Cir. 1984) ("[A] merits judgment is not made less final or appealable by an outstanding fee question.").  Indeed, that logic is inherent to EAJA itself, which provides for fee applications after "final judgment."  28 U.S.C. § 2412(d)(1)(B).  Nor could Plaintiffs' mere assertion that they are "entitled to an award of costs and fees" under EAJA, Pls.' Ltr. at 3, ECF No. 96, satisfy EAJA's specific requirements for a complete fee application (and Plaintiffs do not argue to the contrary).  *See* 28 U.S.C. § 2412(d)(1)(B) (requiring fee application to include, inter alia, "the amount sought" and "an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed"); *accord Crawford*, 935 F.2d at 656 (requiring "that the fee application . . . be supported by an itemized statement").

Moreover, while the Court explained that it would "have quite a few comments" about the "format [and] content" of an attorney's fee petition and that the Court preferred to address attorney's fees after the "additional matters" were resolved, *see* Status Conf. Tr. 35:10-14, July 24, 2020, those observations could not alter the finality of the Court's judgment.  It was incumbent on Plaintiffs to track the deadlines for fee applications under any applicable statutes and bring them to the Court's attention if those statutory deadlines might otherwise conflict with Plaintiffs' or the Court's preferences. And Plaintiffs, represented by sophisticated counsel, had ample opportunity to review the applicable statutory requirements.  Yet they never sought, let alone obtained, an extension of the EAJA deadline.

For all of these reasons, the Court should reject Plaintiffs' assertion that final judgment has not yet been entered in this case.

> **b.**   **Here, EAJA, in conjunction with the Federal Rules, required any fee application to be filed within 240 days of the Court's July 17, 2020 Order, at the latest.**

Because the EAJA deadline is keyed to the time a judgment becomes "not appealable," 28 U.S.C. § 2412(d)(2)(G), the outer limit for a fee application is 150 days after entry of the Court's July 17, 2020 Order on the civil docket, Fed. R. App. Proc. 4(a)(7)(A)(ii), plus 60 days for appeal in cases where a federal agency is a party, Fed. R. App. Proc. 4(a)(1)(B), plus up to 30 days for the EAJA fee application, 28 U.S.C. § 2412(d)(1)(B). This 240-day outer limit for a fee application fell on March 14, 2021—about six months before Plaintiffs' filed their motion.

Under Federal Rule of Appellate Procedure 4(a), the end of the time to appeal a judgment depends on whether the judgment was entered as a separate document under Rule 58(a). *See* Fed. R. App. Proc. 4(a)(7)(A). If the judgment was not "set forth on a separate document," it is considered entered when "150 days have run from entry of the judgment or order in the civil docket." *Id.* 4(a)(7)(A)(ii); *CX Reinsurance Co. Ltd. v. Johnson*, 977 F.3d 306, 311 (4th Cir. 2020). Under this provision, the July 17, 2020 Order became final no later than December 14, 2020.[2]

As a result, the time for any additional appeal expired no later than February 12, 2021. *See* Fed. R. App. Proc. 4(a)(1)(B) (providing 60 days to appeal in cases involving the United States).

---

[2] Because the Court's July 17, 2020 Order merely implemented the Fourth Circuit's judgment after the merits of the case had been fully determined and already appealed, the Court's July 17, 2020 Order, standing alone, should be considered the "separate document" required under Federal Rule of Civil Procedure 58 and Federal Rule of Appellate Procedure 4(a)(7)(A)(ii) for the judgment to have immediate effect. In that circumstance, Plaintiffs' deadline for filing a fee application fell on October 15, 2020. Nevertheless, Defendants assume for purposes of argument that the judgment became effective only after an additional 150 days, because even under that interpretation, Plaintiffs' deadline fell on March 14, 2021—which Plaintiff still missed by over six months.

And the time to file an EAJA fee application expired no later than another 30 days later, on March 14, 2021. *See* 28 U.S.C. § 2412(d)(1)(B); *Baez v. Comm'r of Social Sec.*, 760 F. App'x 851, 854-55 (11th Cir. 2019) (calculating EAJA timeliness in light of Rule 58(a)); *Ira T. v. Comm'r of Social Sec.*, No. GJH-17-1895, 2019 WL 948351, at *1-2 (D. Md. Feb. 27, 2019) (same).

Plaintiffs offer no reason to dispute this well-established interaction between EAJA and the Federal Rules. Accordingly, Plaintiffs have failed to submit a timely fee application and their motion should be denied.

### c.      Plaintiffs' untimely fee application does not warrant equitable tolling.

Plaintiffs alternatively argue that the Court should "equitably toll the deadline" on the theory of "excusable neglect." Pls.' Mot. at 13. In *Scarborough v. Principi*, 541 U.S. 401, 414 (2004), the Supreme Court concluded that EAJA's "30-day deadline for fee applications . . . [is] not properly typed 'jurisdictional,'" but expressly reserved the question of equitable tolling. *See id.* at 421 n.8. Nonetheless, the time limits for submitting EAJA fee applications are strictly construed because the EAJA is a partial waiver of the federal government's sovereign immunity. *See, e.g.*, *Ardestani v. INS*, 502 U.S. 129, 137 (1991) ("The EAJA . . . amounts to a partial waiver of sovereign immunity" which "must be strictly construed in favor of the United States"); *Arulampalam v. Gonzales*, 399 F.3d 1087, 1089 (9th Cir. 2005) (deadline "should be narrowly construed, as it is a waiver of sovereign immunity") (citation omitted); *Coley v. Wilkie*, 32 Vet. App. 284, 289 (2020) (deadline "is an important litigation event crafted as part of the Government's decision to waive its sovereign immunity"); *Huichan v. Barnhart*, No. 05-C-0268-C, 2006 WL 6087660, at *4 (W.D. Wis. Oct. 10, 2006) (deadline is "an emphatic time restriction with which a plaintiff must comply in order to be entitled to an award of EAJA fees").[3] Even

---

[3] That is why the government's typical practice, if the plaintiff requests additional time as EAJA's 30-day deadline approaches, is *not* to consent to an extension, but instead to consent to

assuming that EAJA's 30-day deadline is subject to equitable tolling at all, *see, e.g., Townsend v. Comm'r of Social Security (Townsend I)*, 415 F.3d 578, 581-83 (6th Cir. 2005), Plaintiffs have failed to demonstrate that they meet the rigorous standard for such tolling.

Equitable tolling generally requires the litigant to "establish[] two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016) (citation omitted); *see also Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 551 (4th Cir. 2019) (describing *Menominee* as applying where "plaintiff seek[s] tolling of a limitations period on grounds that did not involve misconduct by the defendant"). Generally, "resort to equity" is "be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *see also Cunningham v. Comm'r of Internal Revenue*, 716 F. App'x 182, 185 (4th Cir. 2018) (reiterating that the Fourth Circuit "reject[s] the argument that [innocent] mistakes warrant applying the extraordinary doctrine of equitable tolling, lest we over time consign filing deadlines and limitations periods to advisory status") (citation omitted).

Plaintiffs disregard this standard, which they cannot meet. While Plaintiffs mentioned their interest in seeking fees in July 2020, they did not diligently pursue the issue. *Cf. Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (courts are "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights"). Courts deny

---

the filing of a skeletal, placeholder fee application—which courts have concluded is enough to satisfy the mandatory statutory filing deadline, but also allows supplementation of the fee application, at a later date, if necessary (*e.g.*, if the parties are unable to reach a negotiated resolution). *See, e.g., Harris v. Castro*, No. 1:14-cv-03110-TCB (N.D. Ga.), ECF Nos. 64-66.

tolling, for example, where "diligent research would have shown that [a] . . . Rule 60(b) motion did not toll or reset the deadline for appeal and, accordingly, did not toll or reset the EAJA deadline." *See Townsend v. Soc. Sec. Admin.* (*Townsend II*), 486 F.3d 127, 134 (6th Cir. 2007) (affirming denial of equitable tolling). But Plaintiffs never asked the Court whether it shared their current position that the Court's July 17, 2020 order closing the case was not a final judgment. They certainly never raised the issue of the EAJA deadline with the Court, let alone moved for an extension of that deadline.

No "extraordinary circumstance . . . prevented timely filing." *Menominee Indian Tribe*, 577 U.S. at 255. Courts in this Circuit have generally rejected equitable tolling for EAJA fee applications, even when they were only a few days late. *See, e.g.*, *Massie v. Astrue*, No. 3:06-0689, 2009 WL 1544003, at *1 (S.D. W. Va. May 29, 2009) (nine days out of time due to "clerical error"); *Parker v. Astrue*, No. 3:07-0066, 2009 WL 1543997, at *1 (S.D. W. Va. May 29, 2009) (two days out of time due to "clerical error"); *Wilson v. Comm'r of Social Sec.*, No. 2:05-44, 2008 WL 2308068, at *2-3 (N.D. W. Va. June 4, 2008) (recommending denial for application filed one day out of time). Plaintiffs deflect from their responsibility to bring a timely fee petition by mischaracterizing the Court's statements as an "admonition at the July 24, 2020 hearing against filing a fee petition," Pls.' Mot. at 13, when the Court was merely expressing a preference regarding judicial economy. The Court did not purport to interpret or explain EAJA's requirements or deadlines under the Federal Rules, let alone prohibit Plaintiffs from filing the fee application on time, or from seeking an extension. Such judicial commentary—standing alone, and without any attempt by Plaintiffs to seek clarification—cannot reasonably be construed to relieve Plaintiffs of their obligation to research and comply with statutory limits. *Cf. Allen v. Comm'r of Soc. Sec.*, No. 10-0068, 2012 WL 1596661, at *3 (S.D.N.Y. Apr. 27, 2012), *report and*

*recommendation adopted*, 2013 WL 6331727 (S.D.N.Y. Dec. 5, 2013) (holding that "counsel has failed to demonstrate a basis for equitable tolling of the statutory deadline" where the correct answer was plain "[h]ad counsel researched the issue").[4]   Accordingly, it would not be unconscionable to enforce this deadline, which Plaintiffs missed by more than six months.

Plaintiffs instead appeal to an "excusable neglect" standard based on cases that have nothing to do with EAJA. *See* Pls.' Mot. at 13 (asserting applicability of "excusable neglect" and citing cases applying Fed. R. App. Proc. 4(a)(5), which allows up to 30 additional days to file an appeal for "excusable neglect or good cause").   But it is well established that "a garden variety claim of excusable neglect" cannot justify equitable tolling.   *Irwin*, 498 U.S. at 96.   And even if "excusable neglect" were an appropriate lens, Plaintiffs fail to meet that standard for the same reasons discussed above.   The Fourth Circuit applies four factors, of which "the reason for the delay, including whether it was in the reasonable control of the movant" is the "most important." *Fernandes v. Craine*, 538 F. App'x 274, 276 (4th Cir. 2013) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) and *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 534 (4th Cir. 1996)).   "[E]xcusable neglect is only meant to be invoked in extraordinary cases to avoid injustice, and is not meant to be easily demonstrated." *Barrette Outdoor Living, Inc. v. Iron World Mfg., LLC*, No. SAG-19-3027, 2020 WL 4133638, at *2 (D. Md. July 17, 2020).

---

[4] The only EAJA case Plaintiffs cite from within the Fourth Circuit is inapplicable because, in that case, "ambiguity regarding the proper deadline for Plaintiffs' attorney's fees applications was created by a local rule of [the district] court." *N. Carolina All. for Transp. Reform, Inc. v. U.S. Dep't of Transp.*, 104 F. Supp. 2d 599, 606 (M.D.N.C. 2000) (tolling EAJA deadline for 29 days). Here, no judicial rule created any ambiguity about the applicable deadlines, and the Court issued no ruling regarding any deadline.

As discussed above, it was within Plaintiffs' reasonable control to confirm the deadline for an EAJA fee application and ensure that they complied with that deadline. The Court's expressed interest in judicial economy—without any of the applicable legal requirements before the Court and without issuing any ruling adopting a particular view of the law—did not relieve Plaintiffs of their obligations, nor prevent them from filing a timely fee application. Moreover, cases regarding courts' authority to extend *the time to appeal* for up to 30 days for "excusable neglect or good cause," Fed. R. App. P. 4(a)(5),[5] do not fit the circumstances here. Two decisions treated the district court's express misstatement of the appeal deadline to a criminal defendant as sufficient basis for excusable neglect where the appeal was still filed "within the excusable neglect period." *United States v. Cambron*, 406 F. App'x 772, 773 (4th Cir. 2011); *United States v. Dixon*, 73 F. App'x 599, 600 (4th Cir. 2003). The third expressed doubt about whether "excusable neglect" was met because "[a]ttorney unfamiliarity with or misunderstanding of the federal rules, except in rare instances, is generally not excusable neglect under Rule 4(a)(5)," but found no abuse of discretion because it was "at least arguable that reliance on a trial judge's extension of time . . . could constitute excusable neglect." *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1563-64 (7th Cir. 1990). But here, the Court did not grant an improper extension of time or misstate any statutory deadline. For this reason, Plaintiffs—who are represented by a large group of attorneys from multiple sophisticated law firms—bear sole responsibility for their own failure to submit a timely fee application. They cannot blame the Court. And this was not a near miss—they missed the deadline by a matter of months, not days.

---

[5] The notice of appeal deadline is jurisdictional and subject to judicial extension only for 30 additional days. *See* Fed. R. App. P. 4(a)(5); *see also* Fed. R. Civ. P. 77(d)(2) ("Lack of notice of the entry [of judgment or order] does not affect the time for appeal or . . . authorize the court to relieve [] a party for failing to appeal within the time allowed, except as allowed by Federal Rule of Appellate Procedure (4)(a).").

Because Plaintiffs "cannot collect any attorney fees or expenses under the EAJA if [their] initial fee application was not timely filed," *Townsend II*, 486 F.3d at 135, and they have failed to meet the standards for equitable tolling or excusable neglect, Plaintiffs' motion should be denied in its entirety.

## II.    PLAINTIFFS ARE NOT ELIGIBLE FOR OR ENTITLED TO ANY FEES.

Even if Plaintiffs had filed a timely fee petition, it should still be denied, in its entirety, for either or both of two independent reasons: (1) the position of the United States was substantially justified, as evidenced by (among other things) the fact that several Supreme Court justices and appellate and district court judges accepted some or all of Defendants' arguments; and (2) an award of fees would be unjust under the circumstances of this litigation which, unlike the other DACA-rescission cases, had no real-world impact on DACA, or even for the Plaintiffs in this case.

### a.    The position of the United States was substantially justified.

EAJA only allows an award of attorney's fees if "the position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B). Under that standard, "the Government will avoid paying fees as long as 'a reasonable person could have thought' that its litigation position was 'correct.'" *Meyer v. Colvin*, 754 F.3d 251, 255 (4th Cir. 2014) (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)). That is because "[t]he intent of Congress in enacting the EAJA was to penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position." *Crawford*, 935 F.2d at 659 (citation omitted). In other words, "[w]hile the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Roanoke River Basin*, 991 F.2d at 139. And so, as the Fourth Circuit has explained on several occasions, "the Government need not prevail in an action for its position to have been

substantially justified." *Meyer*, 754 F.3d at 255; *see also Crawford*, 935 F.2d at 659 (no award of EAJA fees because "the government's conduct in this case was reasonable," even though the government did not prevail).

This inquiry is straightforward here: Although the government ultimately did not prevail on the core claims in this litigation, along the way, the government persuaded several Justices and judges that the rescission of DACA was lawful in its entirety, including Justice Thomas, Justice Alito, Justice Gorsuch, Justice Kavanaugh, Judge Richardson, and Judge Titus—all of whom concluded that the government's litigation position was not only reasonable, but meritorious. Regardless of who is right and who is wrong on these questions, under these circumstances, it is undeniable that "a reasonable person could have thought" that the government's "litigation position was 'correct,'" *Meyer*, 754 F.3d at 255 (quoting *Pierce*, 487 U.S. at 566 n.2), because several jurists actually did—even though that position fell one vote short before the Supreme Court and one vote short before the Fourth Circuit.

That litigation history alone all but resolves the question of fee entitlement here, because "the existence of several dissenting opinions is particularly persuasive evidence of substantial justification[.]" *In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 636 (D.C. Cir. 2014); *see also, e.g., Griffith v. Comm'r of Soc. Sec.*, 987 F.3d 556, 571 (6th Cir. 2021) ("While the presence of a dissent may not always demonstrate that the government's position was substantially justified, the deliberate and thoughtful nature of Judge Rogers's reasoning signals that reasonable minds could disagree on these issues."); *Am. Ass'n of Pol. Consultants, Inc. v. Wilkinson*, 518 F. Supp. 3d 881, 890 (E.D.N.C. 2021) (the government's position, albeit unsuccessful at the Supreme Court, was "substantially justified" when "[c]onsidering the totality of the circumstances," including "the support found in" the opinions of other justices and judges);

*United States v. Paisley*, 957 F.2d 1161, 1169 (4th Cir. 1992) ("We therefore think that the district court's perception that *Crandon*'s ultimate unanimous rejection of the Government's position necessarily demonstrated that ambiguity justifying the Government's position was 'nonexistent,' is flatly belied by a careful reading of the *Crandon* Court's two opinions.").

In addition, on some of the other issues at stake in this litigation, the government had unequivocal success. The Fourth Circuit unanimously ruled in the government's favor in rejecting Plaintiffs' estoppel claims, going so far as to describe *Plaintiffs'* position as unreasonable. *See Casa de Maryland*, 924 F.3d at 706 ("In view of these clear and unequivocal warnings, Plaintiffs could not reasonably believe that the information they provided as part of their DACA application would never be used for immigration enforcement purposes."). Plaintiffs never sought further review of that question in any court. And the Supreme Court ruled 8-1 in the government's favor that Plaintiffs' equal-protection claims—which were brought in this case, and also in the *Regents* cases—were meritless. *See Regents*, 140 S. Ct. at 1915 ("None of these points, either singly or in concert, establishes a plausible equal protection claim."). Accordingly, "the overall position," *Roanoke River Basin*, 991 F.2d at 140, taken by the government was at least reasonable, even though a 5-4 Supreme Court and a 2-1 Fourth Circuit each concluded that the rescission of DACA violated the APA.

Plaintiffs seem to think that because a bare majority of the Supreme Court and a bare majority of the Fourth Circuit both concluded that one of Plaintiffs' claims had merit, then the government's position cannot have been substantially justified. *See, e.g.*, Pls.' Mot. at 7 ("Defendants' conduct in rescinding DACA violated numerous basic principles of administrative law and the APA; therefore, the Government's defense of that rescission in this Court was substantially unjustified."). That is wrong, as the Fourth Circuit has consistently held. *See, e.g.*,

*Crawford*, 935 F.2d at 657 ("[T]he Secretary is not automatically liable for attorney's fees every time he loses a case."); *Roanoke River Basin*, 991 F.2d at 139 ("Whether the government's position in the litigation is substantially justified . . . focuses, not on the government's success or failure, but on the reasonableness of its position in bringing about or continuing the litigation."); *Smith v. Heckler*, 739 F.2d 144, 147 (4th Cir. 1984) (same). Indeed, not only is Plaintiffs' success not dispositive, but the Fourth Circuit has held that there is not even a "*presumption* that the Government position was not substantially justified, simply because it lost the case." *Tyler Business Servs., Inc. v. NLRB*, 695 F.2d 73, 75 (4th Cir. 1982) (emphasis added). All of this precedent is unsurprising, given the text of the statute: if Plaintiffs were correct that success on their APA claim was enough, then there would be no need for the "substantially justified" inquiry at all—as an award of EAJA fees *already* requires that the plaintiff be the "prevailing party." 28 U.S.C. § 2412(d)(1)(B).

In sum, reasonable judges have had varying opinions over the years about several of the issues that were litigated in this case. But under the American Rule, "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252-53 (2010). No exception to that "bedrock principle" applies here, *id.*, because Plaintiffs cannot show that "the position of the United States was not substantially justified," 28 U.S.C. § 2412(d)(1)(B). Accordingly, Plaintiffs' fee motion can and should be denied, in its entirety, for that reason alone.

### b.     Plaintiffs' counsel brought substantially duplicative litigation.

As for whether there are "special circumstances" that would make an EAJA award "unjust," *Crawford*, 935 F.2d at 656, Plaintiffs say virtually nothing at all, even though it is one of the elements of an EAJA claim in this Circuit. In fact, it would be "unjust" to award fees here, in light of the other, earlier-filed litigation brought in three other courts on the same subject. That is,

22

substantial litigation challenging the rescission of DACA had already been brought separately in New York, the District of Columbia, and California—and those cases already provided nationwide relief by the time plaintiffs in this case prevailed before the Fourth Circuit, and only those cases reached the Supreme Court. Notably, none of the plaintiffs in those cases have ever requested (let alone obtained) attorney's fees.

This case, by contrast, duplicated the efforts of earlier-filed cases that had already provided relief for DACA recipients nationwide, including the Plaintiffs in this case. Indeed, by the time this case was filed, litigation challenging the rescission of DACA (on the exact same theory) was well underway in those three other districts. And of all the challenges to the rescission of DACA, this is the only one in which the district court ruled against the plaintiffs. By the time Plaintiffs actually did prevail (in substantial part) before the Fourth Circuit, the rescission of DACA had already been enjoined, nationwide, for sixteen months, after six rulings by three other district courts in nine different cases. *See Regents*, 279 F. Supp. 3d at 1048; *Batalla Vidal*, 279 F. Supp. 3d at 401; *NAACP*, 298 F. Supp. 3d at 209.

Plaintiffs assert that, "[w]ith the Fourth Circuit's May 17, 2019 opinion that the rescission of DACA was arbitrary and capricious and this Court's July 17, 2020 order in light of that ruling, Plaintiffs achieved a significant and beneficial result for hundreds of thousands of individuals: the removal of a fear of deportation and a pathway for DACA's benefits for new applicants." Pls.' Mot. at 6. But in reality, as explained above, three courts had *already* ruled that the rescission of DACA was arbitrary and capricious, well before May 2019. Given that this case duplicated those efforts, these "circumstances make an award unjust" in this case. *Crawford*, 935 F.2d at 656.

## III.     PLAINTIFFS' FEE REQUEST IS UNREASONABLE.

Even if Plaintiffs were entitled to *some* award of fees, they bear the burden of demonstrating, with itemized and contemporaneous billing records, that the amount they seek is reasonable. *See Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 97-98 (4th Cir. 1993). And this Court must "exercise [its] independent judgment on the reasonableness of fees requested before taxing them against the United States." *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996).

The billing records on which Plaintiffs rely are inadequate to justify the amount they seek for four interlocking reasons. *First*, Plaintiffs make extensive use of "block billing," "lump[ing] together multiple tasks" into the same billing record, "making it impossible to evaluate their reasonableness." *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004). "[W]hen an attorney bill[s] for more than one task in a day, the court is left to approximate the amount of time which should be allocated to each task." *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989). Although "not prohibited," block billing "simply does not provide the court with a sufficient breakdown to meet [Plaintiffs'] burden to support its fee request in specific instances." *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012). Here, the billing records Plaintiffs submitted do not contain "a single instance in which a timekeeper recorded multiple entries for a single day; instead, only the total amount of time for each day is reported, with no breakdown of how that time was spent among often as many as four or five distinct tasks." *Id.*; *see* Pls.' Exhibits 6-10, ECF 142-7 – 142-11.

*Second*, Plaintiffs compound the problem with overly vague task descriptions that lack sufficient detail to allow this Court to "verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task." *Role*

*Models*, 353 F.3d at 971.   Bare-bones entries such as "[r]esearch and writing for appellate brief" are "inadequate to meet a fee applicant's 'heavy obligation to present well-documented claims.'" *Id.* (quoting *Kennecott Corp. v. EPA*, 804 F.2d 763, 767 (D.C. Cir. 1986)).   Billing entries "that wholly fail to state, or to make any reference to the subject discussed at a conference, meeting or telephone conference" are likewise inadequate.  *Id.*

Plaintiffs' billing records here are packed with examples of such vague and generic entries. For example, between November 23rd and 27th, 2017, Mr. Freedman billed a total of 32.1 hours (with 4, 6, 7, 4, and 11.1 hours on each respective day) all with the description, "Work on response to government's brief."  Pls.' Ex. 8 at 10-11, ECF 142-9 at 11-12.   On other occasions, he billed for tasks such as "Strategy; joint defense calls" (1.9 hours, 5/21/2019; Pls.' Ex. 8 at 67; ECF 14-9 at 68) or "Strategy; team call; call with counsel in related cases; draft response to motion to expedite" (4 hours, 5/23/2019; Pls.' Ex. 8 at 67, ECF 142-9 at 68).   Around the same time, Ms. Bower billed for "Attention to strategy; review and comment on J. Freedman's summary of call from SG's office; internal Wilkie prep session" (2.4 hours, 5/22/2019; Pls.' Ex. 8 at 67, ECF 142-9 at 68).   Between November 23 and December 11, 2018, Ms. Dillingham billed a total of 77 hours to "[p]repare for oral argument," as well as an additional 45 hours (for a total of 122 hours) for the same task block-billed with travel and attending argument.  *See* Pls.' Ex. 8 at 61-65, ECF 142-9 at 62-66; Pls.' Ex. 9 at 1, ECF 142-10 at 2.[6]   Similar examples abound, and are collected in

---

[6]  Aside from their lack of specificity, Ms. Dillingham's entries for oral argument preparation are troublesome in two additional respects. First, even assuming that travel time to and from moots is compensable, Ms. Dillingham's travel time is accounted for in blocks of at least 10 hours, making it impossible to verify compliance with the guidelines in Section 2(e)(ii) of Appendix B to the Local Rules. Second, 122 hours—more than two and a half weeks of full-time, uninterrupted work—is plainly excessive to prepare for and deliver (along with Mr. Freedman) part of a single appellate argument of unexceptional length or complexity.  *See, e.g.*, *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 953-54 (1st Cir. 1984) (66 hours for Professor Laurence Tribe, "an acknowledged authority in constitutional law" to prepare for appellate argument was

Defendants' attached Exhibit 1.  None of those entries, or others like them, offer any basis for this Court to determine whether the time expended was reasonable.  The combination of vague entries with block billing—such as Mr. Mathews' entry for April 18, 2018, in which he billed 9.3 hours to "Prepare for DACA team meeting on Thursday; review materials; draft and revise summary of issues for appeal; review work from A. Mendel and N. Cassidy on issue for appeal; review list of argument from amicus briefs and parallel litigation," Pls.' Ex. 8 at 22, ECF 142-9 at 23—magnifies the difficulty.

*Third*, a large number of Plaintiffs' time entries are simply incomplete: the entries, as provided by Plaintiffs, cut off mid-sentence or even mid-word.  For example, on October 30, 2017, Ms. Bower billed 4.8 hours to "Correspondence regarding prep for conference; review and analyze standing research for organizational plaintiffs; review and analyze summary of discovery in other DACA cases; prepare for and co-counsel strategy discussion; attention to team assignments; m". Pls.' Ex. 6 at 5; ECF 142-7 at 6.  A few days later, she billed 4.9 hours for multiple tasks, with an entry ending "review and analyze EDNY Rule 12 opposition; re". *Id.* Similarly, on December 11, 2017, Mr. Mathews billed 4.5 hours to numerous tasks, with an entry ending "review and revise hearing preparation questions and answers document; review and analy". Pls.' Ex. 8 at 16; ECF 142-9 at 17.  Many more such entries are collected in Exhibit 1.  Each entry suggests that the attorney intended to record at least one additional task to account for the time claimed, but it is impossible to determine what that task (if any) may have been.  Such incomplete entries make it impossible for the Court to determine whether the phantom task was a reasonable and billable use

---

excessive, because "it is simply not conceivable" that he "would have required the equivalent of a full week and a half of billable hours to prepare for oral argument").

of time, and because of block billing, they also prevent the Court from assessing the whether the time spent on every other task in the block bill was reasonable.

*Fourth* and finally, Plaintiffs attempt to charge for a range of non-billable activities, from clerical and administrative tasks that "cannot be charged to the public fisc," *Michigan v. EPA*, 254 F.3d 1087, 1095 (D.C. Cir. 2001), to working on media strategy, to delivering presentations on the litigation for the general edification of other attorneys not staffed on this case. For example, on November 22, 2017, Mr. Mathews devoted some portion of the 3.7 hours he billed to this litigation to "prepar[ing] binders of cases cited in Wilkie sections of opposition brief," Pls.' Ex. 8 at 10; ECF 142-9 at 11, a "purely clerical task" that "ought to be considered part of normal administrative overhead." *Michigan*, 254 F.3d at 1095. On March 6, 2018, Mr. Freedman spent some part of 4 hours "draft[ing a] press statement," Pls.' Ex. 8 at 18; ECF 142-9 at 19, a task with no bearing on achieving a "favorable result" in litigation, *Role Models*, 353 F.3d at 975. On July 11th and 12th, 2018, Mr. Mathews spent part of 7.8 hours and 4.5 hours respectively to "draft and revise talking points for E. Bower CLE on DACA" and "[a]ttend CLE for The Future of DACA at Arnold & Porter." Pls.' Ex. 8 at 43, 44; ECF 142-9 at 44-45. And on May 23, 2019, he "attend[ed a] photo and award session" at Washington Lawyers' Committee. *Id.* at 68; ECF 142-9 at 69 (that billing entry, incidentally, ends with the cryptic task "call w"). None of those activities contributed to any success in this litigation, and they are not properly chargeable to the United States treasury.

Plaintiffs also seek compensation for work related to other litigation. For example, on July 9, 2019, Ms. Bower spent 1.2 hours to "[r]eview and analyze strategy for amicus filing in connection with other DACA cases and correspondence with K. Mathews and xDACA regarding same." Pls.' Ex. 8 at 79; ECF 142-9 at 77. But this Court "may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case

27

before the court," *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987)—not before other courts in which *other* plaintiffs' challenges to the rescission of DACA were far more successful and consequential (but in which they are not seeking fees). The entries in which Plaintiffs seek fees for non-litigation work, or work on other litigation matters, are collected in Exhibit 1.

Taken together, the overlapping issues of block billing, vague task descriptions, incomplete entries, and non-compensable tasks make Plaintiffs' billing records inadequate to support their claim. Nor are these minor deficiencies in the context of Plaintiffs' overall submission: Exhibit 1, which lists vague, incomplete, and non-billable or non-case related entries, but not entries that are deficient only for block billing, accounts for over 1,100 hours—more than half the total for which Plaintiffs seek compensation. A sizeable reduction in any award to Plaintiffs' is therefore necessary. *See, e.g.*, *Role Models*, 353 F.3d at 973 (imposing fifty percent reduction in award sought because of "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries").

Plaintiffs claim that they exercised billing judgment to cut their overall hours claimed from 5,991.8 hours tagged to this case to 2,116.2 for which they are seeking reimbursement. Pls.' Mot. at 17; ECF 142 at 22. This reduction should not eliminate scrutiny for their request; instead it merely highlights that expending almost 6,000 hours shows an extraordinary degree of overstaffing—particularly for a procedurally straightforward, record-review case that required one round of dispositive-motions briefing in district court (with one argument), one round of appellate briefing (with one argument), and no discovery. Arnold & Porter staffed forty-four timekeepers on this litigation. *See* Freedman Decl. at 3, ¶ 4; ECF 142-4 at 3. Wilkie Farr & Gallagher provided another twenty-seven. *See* Mathews Decl. at 2, ¶ 5; ECF 142-5 at 3. The Washington Lawyers' Committee added another three, for a total of seventy-four timekeepers accumulating allegedly

billable hours. Corkery Decl. a 1, ¶ 4, ECF 142-6 at 2. Thus, this Court should not overlook the manifest deficiencies in the actual billing records that Plaintiffs have presented on the assumption that enough compensable work to make up the difference may have been done in the hours Plaintiffs claim to have written off. Plaintiffs themselves admit that they excluded those hours for "administrative tasks, non-compensable time, or duplicitous work," and nothing substantiates Plaintiffs' generic claim that the excluded hours were "important to restoring DACA's protections." *Id.*; *cf, e.g.*, *Thompson v. U.S. Dep't of Housing & Urban Dev.*, 2001 WL 1636517, at *11 (D. Md. Dec. 12, 2001) (reviewing "detailed billing records" for time excluded from plaintiffs' claim to conclude that "the fee petition demonstrate[d] the exercise of billing judgment"). Any award of fees to Plaintiffs should be substantially reduced to reflect their failure to justify the hours actually submitted for reimbursement.

## CONCLUSION

Plaintiffs' motion for attorney's fees should be denied in full, or at least in substantial part.

Dated: November 10, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

 /s/  *Stephen M. Pezzi*
GALEN N. THORP (D. Md. 813831)
  Senior Trial Counsel
STEPHEN M. PEZZI (D. Md. 813691)
CORMAC A. EARLY
  Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*