# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

CASA DE MARYLAND, *et al.*,

    Plaintiffs,

    v.

U.S. DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

    Defendants.

Civil Action No. TDC-17-2942

## MEMORANDUM OPINION

This case involved challenges to the 2017 rescission by the United States Department of Homeland Security ("DHS") of the Deferred Action for Childhood Arrivals ("DACA") policy. After a lawsuit in the United States District Court for the District of Maryland, briefing and oral argument in the United States Court of Appeals for the Fourth Circuit, and a denial of the Government's petition for a writ of certiorari, the rescission of DACA was vacated on the grounds that it was effectuated in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–59, 701–06 (2018), and the Government was enjoined from implementing or enforcing the rescission. Presently pending is Plaintiffs' Motion for Attorney's Fees and Costs. ECF No. 142. Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

In 2012, the Secretary of Homeland Security established the DACA policy. Under DACA, undocumented immigrants who came to the United States as children, sometimes referred to as "Dreamers," may obtain work authorization, may leave the country and legally return in certain

circumstances, and are protected from removal. DHS represented to DACA applicants that its ability to share the information it collected from them with other government agencies would be generally limited, and it would not use such information for immigration enforcement purposes.

On September 5, 2017, Acting Secretary of Homeland Security Elaine Duke issued a memorandum ("the Duke Memorandum") rescinding DACA, primarily on the grounds that the United States Court of Appeals for the Fifth Circuit had found a related deferred action program, Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA"), to conflict with the Immigration and Nationality Act ("INA"). *Texas v. United* States, 809 F.3d 134, 186 (5th Cir. 2015), *aff'd by equally divided Court*, 136 S. Ct. 2271 (2016). Acting Secretary Duke relied on a letter provided by Attorney General Jefferson B. Sessions III, which stated in part that DACA was effectuated "without proper statutory authority," and that "[s]uch an open-ended circumvention of immigration laws was an unconstitutional exercise of authority by the Executive Branch." Admin. Record at 251, ECF No. 26-1. Referencing the Fifth Circuit's ruling on DAPA in *Texas*, the Attorney General stated, "Because the DACA policy has the same legal and constitutional defects that the courts recognized as to DAPA, it is likely that potentially imminent litigation would yield similar results with respect to DACA." *Id.*

On October 5, 2017, Plaintiffs Casa de Maryland, eight other non-profit and coalition organizations, and various individuals filed a civil action against Defendants DHS and other agencies and officials of the United States government ("the Government") in the United States District Court for the District of Maryland, alleging that the rescission of DACA violated the Due Process Clause of the Fifth Amendment, including its equal protection component, and the APA. The Complaint further alleged that the Government should be equitably estopped from rescinding DACA and sought a declaratory judgment that DACA is lawful. On March 5, 2018, Judge Roger

2

W. Titus granted in part and denied in part the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment. Order at 1, ECF No. 43. Judge Titus ruled that Plaintiffs' claims were justiciable, granted summary judgment to Plaintiffs on their estoppel claim, and enjoined the Government from using information provided by Dreamers through DACA for removal or other immigration enforcement purposes. *Id.* However, Judge Titus granted summary judgment in favor of the Government on all other claims, including the claim that DHS had rescinded DACA in violation of the APA, and issued a declaratory judgment that the rescission of DACA was "valid and constitutional in all respects." *Id.*

Both sides appealed to the United States Court of Appeals for the Fourth Circuit. On May 17, 2019, following extensive briefing and oral argument, the Fourth Circuit affirmed in part, reversed in part, and vacated in part the judgment of the district court. *Casa de Maryland v. U.S. Dep't of Homeland Security*, 924 F.3d 684, 707 (4th Cir. 2019). Specifically, the Fourth Circuit affirmed the determination that the claims were justiciable, reversed the district court's ruling that the Government was estopped from sharing information and vacated its injunction on that issue, and reversed the ruling that the DACA rescission did not violate the APA and instead vacated the rescission as arbitrary and capricious. *Id.* at 706. The Fourth Circuit vacated the district court's rulings on the constitutional claims as unnecessary to the resolution of the case and dismissed those claims. *Id.* Judge Julius N. Richardson, concurring in part and dissenting in part, dissented from the ruling that the DACA rescission violated the APA on the grounds that the rescission was judicially unreviewable. *Id.* at 707, 715 (Richardson, J., concurring in part and dissenting in part).

The Government filed a petition for a writ of certiorari to the United States Supreme Court. While the petition was pending, in a separate case also challenging the DACA rescission, the Supreme Court ruled that the DACA rescission was judicially reviewable and that it violated the

3

APA in that it was an arbitrary and capricious action. *Dep't of Homeland Security v. Regents of the Univ. of California* ("*University of California*"), 140 S. Ct. 1891, 1907, 1915 (2020). In the opinion of the Court joined by five justices, Chief Justice Roberts rejected the plaintiff's arguments that the rescission was arbitrary and capricious on the grounds that the Government's conclusion that DACA is unlawful was wrong, and that the Duke Memorandum did not adequately explain why it was deemed to be unlawful, because he concluded that the Secretary of Homeland Security was effectively bound by the Attorney General's legal determination. *See id.* at 1910. Rather, the Court concluded that the DACA rescission was arbitrary and capricious because where the Fifth Circuit, and by extension, the Attorney General had found DACA unlawful primarily because it provided work authorization and public benefits in contravention of the INA, Acting Secretary Duke had not considered or addressed whether the forbearance component of DACA, under which DHS would not seek to remove Dreamers as a matter of enforcement priorities, could be retained. *Id.* at 1911. The Court also found that the failure of the Duke Memorandum to consider reliance interests contributed to the failure to comply with the APA. *Id.* at 1913.

Four justices dissented from the ruling that the DACA rescission violated the APA for these reasons, with three—Justices Thomas, Alito, and Gorsuch—also taking the position that DACA was *per se* unlawful. *Id.* at 1922, 1931 (Thomas, J., concurring in the judgment in part and dissenting in part); *id.* at 1935 (Kavanaugh, J., concurring in the judgment in part and dissenting in part). Chief Justice Roberts, joined by seven other justices, concluded the Plaintiffs had no viable equal protection claims, finding insufficient basis to conclude that the DACA rescission was motivated by discriminatory animus. *Id.* at 1915–16 (majority opinion); *id.* at 1919 n.1 (Thomas, J., concurring in the judgment in part and dissenting in part); *id.* at 1936 (Kavanaugh, J., concurring in the judgment in part and dissenting in part).

Following the decision in *University of California*, the Supreme Court denied the petition for a writ of certiorari in the present case on June 29, 2020. The judgment of the Fourth Circuit took effect the next day on June 30, 2020. On July 17, 2020, consistent with the Fourth Circuit's judgment, Judge Paul W. Grimm entered a declaratory judgment that the DACA rescission and the actions taken by the Government to rescind DACA were arbitrary and capricious under the APA, vacated the DACA rescission, and enjoined the Government from implementing or enforcing the DACA rescission.

The same day, on July 17, 2020, Plaintiffs filed a notice requesting that the Court maintain jurisdiction of the case because of concerns that the Government was not yet complying with the Fourth Circuit's mandate and seeking guidance on when and how to seek attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (2018). During a status conference held on July 24, 2020, Judge Grimm agreed that there were remaining substantive issues relating to compliance and instructed Plaintiffs to refrain from filing a fee petition until after those issues were resolved, in part because the proposed amount of attorney's fees would change. *See* 7/24/20 Status Conference Tr. at 35, Mot. Atty's Fees Ex. 2, ECF No. 142-3. Judge Grimm also instructed the parties to file a status report including, as relevant here, a proposed briefing schedule for a Motion for an Order to Show Cause for failure to comply with court orders, as well as information on possible limited discovery to be produced prior to the filing of such a motion. Plaintiffs sent to the Government limited discovery requests on July 27, 2020. Then, on August 5, 2020, in accordance with the dates proposed in the parties' joint status report, Judge Grimm set the briefing schedule for the Motion for an Order to Show Cause, which the parties then fully briefed.

On January 20, 2021, on his first day in office, President Joseph R. Biden, Jr. issued a presidential memorandum directing the Secretary of Homeland Security and the Attorney General to preserve and fortify DACA. In light of that apparent change in policy, on February 26, 2021, Judge Grimm denied without prejudice Plaintiffs' Motion for an Order to Show Cause and instead directed the parties to file joint status reports every 45 days on whether the new presidential administration's review of the DACA program addressed and resolved the issues underlying the Motion for an Order to Show Cause. In each of the four status reports that followed, the parties referenced substantive issues, the issue of attorney's fees, and the parties' efforts to resolve the attorney's fee request without a motion. After the parties were unable to reach an agreement, Judge Grimm approved a briefing schedule for Plaintiffs' Motion for Attorney's Fees, as well as a subsequent Motion for an Extension of Time, and Plaintiffs filed their Motion for Attorney's Fees in accordance with the schedule, as extended, on October 8, 2021.

## DISCUSSION

In their Motion, Plaintiffs seek an award of attorney's fees and costs pursuant to EAJA, which permits such an award, under certain circumstances, to a prevailing party in a civil action against the United States government. 28 U.S.C. § 2412(d). Plaintiffs seek fees on behalf of their attorneys, the Washington Lawyers Committee for Civil Rights and Urban Affairs, Arnold & Porter Kaye Scholer LLP, and Willkie Farr & Gallagher LLP. Plaintiffs initially requested $418,197.14 in attorney's fees and $13,347.37 in costs. In their reply brief, Plaintiffs revised their request, adding the time spent researching and drafting the reply brief and subtracting time in response to the Government's objections, resulting in a revised demand of $399,812.04 in attorney's fees and $13,347.37 in costs. The Government does not dispute that Plaintiffs were prevailing parties as required to be eligible for an award of attorney's fees under EAJA but instead

6

argue that: (1) Plaintiffs' fee petition is untimely under EAJA; (2) attorney's fees are not available because the position of the United States was "substantially justified"; (3) there are "special circumstances" making an award of fees under EAJA unjust in that Plaintiffs brought substantially duplicative litigation; and (4) Plaintiffs' fee request is unreasonable. Opp'n at 19, 22, ECF No. 144.

## I.    Legal Standard

Under EAJA, "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

## II.   Timeliness

As an initial matter, the Government argues that Plaintiffs should not be awarded any attorney's fees or costs because their fee petition was untimely. Specifically, the Government argues that the litigation on the merits concluded on July 17, 2020, that the time for appeal ended on February 12, 2021, and that any fee application should therefore have been filed within 30 days after that date, or by March 14, 2021. The Government also argues that Plaintiffs are not entitled to equitable tolling.

For their part, Plaintiffs argue that the Motion for Attorney's Fees is timely because the July 17, 2020 Order was not a final judgment, or in the alternative, that they are entitled to equitable tolling because they complied in good faith with the Court's directions on the timing of the filing of the Motion.

7

## A.   Final Judgment

Under EAJA, a prevailing party must submit a fee petition "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). "Final judgment" is defined as "a judgment that is final and not appealable, and includes an order of settlement." *Id.* § 2412(d)(2)(G). The Supreme Court has further defined "final judgment" for purposes of EAJA as "a judgment rendered by a court that terminates the civil action for which EAJA fees may be received." *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991). The 30-day statutory time limit to file a fee petition begins to run after the time to appeal the "final judgment" has expired. *Id.* Accordingly, the Government argues that the fee petition needed to have been submitted no later than March 14, 2021 because (1) the July 17, 2020 Order was a judgment concluding litigation on the merits; (2) the time to appeal the July 17, 2020 Order expired on February 12, 2021; and (3) 30 days after February 12, 2021 is March 14, 2021.

In this case, final judgment was not entered on July 17, 2020. Although the Court's order initially directed the Clerk of the Court to close the case, Judge Grimm made clear during the July 24, 2020 status conference that there were "substantive matters" that emerged or remained. 7/24/20 Status Conf. Tr. at 35. For example, Judge Grimm noted that the Supreme Court's ruling that DHS had not adequately considered certain issues in making the DACA rescission decision would necessarily cause DHS to reevaluate the decision and possibly reinstate it upon further analysis. In turn, the parties likely would disagree on what steps needed to be taken to return to the status quo while that review was ongoing, on whether DHS was taking those steps, and on what discovery may be required on those issues. Indeed, at the end of the status conference, the parties agreed to provide a proposed briefing schedule on a potential Motion for an Order to Show Cause in relation to whether the Government was violating any requirements relating to DACA.

On July 27, 2020, Plaintiffs sent the Government limited discovery requests. On August 5, 2020, Judge Grimm actually set a briefing schedule on these issues. Thus, the result of the July 24, 2020 status conference demonstrates that the July 17, 2020 order was not, in fact, a "final judgment" that actually terminated the civil action underlying the attorney's fee request and thus does not provide a basis to support a finding that the Motion for Attorney's Fees was untimely. *See Melkonyan*, 501 U.S. at 96.

## B.      Equitable Tolling

Even if final judgment were deemed to have been technically entered on July 17, 2020, such that the Motion for Attorney's Fees was untimely, Plaintiffs would be entitled to equitable tolling. "The EAJA . . . amounts to a partial waiver of sovereign immunity." *Ardestani v. INS*, 502 U.S. 129, 137 (1991). Where Congress has waived sovereign immunity, there is a presumption that the rule of equitable tolling applies against the Government in the same way it applies in private suits. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990). "[A] litigant is entitled to equitable tolling" of a limitations period only if the litigant establishes two elements: (1) that the party had been pursuing its rights diligently; and (2) that some "extraordinary circumstance" stood in its way and prevented timely filing. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). "[E]quitable tolling is appropriate in those "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

Here, both prongs are met. First, Plaintiffs pursued their rights diligently. On the same day as the Court's July 17, 2020 Order, Plaintiffs submitted a letter, in compliance with a Case Management Order issued by Judge Grimm, expressing their intention to seek attorney's fees

under EAJA. Plaintiffs then raised the issue of seeking fees under EAJA at the July 24, 2020 Status Conference. At that time, Judge Grimm directed Plaintiffs to file their Motion for Attorney's Fees only after the remaining substantive issues in the case were resolved. Once that resolution occurred, Plaintiffs continued to reference their interest in filing a Motion for Attorney's Fees in all four of the subsequent status reports submitted in accordance with Judge Grimm's directions. Once Judge Grimm approved a briefing schedule and an extension of time for the Motion for Attorney's Fees, Plaintiffs filed it in accordance with those directions on October 8, 2021. Thus, Plaintiffs consistently sought to preserve their right to seek attorney's fees, in a manner that complied with the Court's orders, throughout the period leading up to the filing of the Motion.

Second, Plaintiffs' failure to file the Motion for Attorney's Fees was the result of extraordinary circumstances beyond their control—the direct orders of the presiding judge, which included both the general terms of the Case Management Order, ECF No. 77, and the specific directive at the July 24, 2020 status conference to refrain from filing the Motion until leave was granted by the Court. Although the Government argues that Plaintiffs should have filed their Motion earlier if only to maintain their rights, to do so would have violated the specific orders of Judge Grimm, who had clearly taken the position that the case was not fully resolved such that any Motion for Attorney's Fees would have been premature. To the extent that final judgment may have been entered as a technical matter, it would be entirely unjust to enforce the statutory deadline against Plaintiffs, who cannot be expected to have violated the Court's clear directions relating to the filing of the Motion and risk a finding of contempt. The Court therefore finds that equitable tolling applies to excuse any failure to file the Motion in accordance with the statutory deadline.

### III.    Substantial Justification

The Government argues that Plaintiffs are not entitled to attorney's fees under EAJA because its positions taken in the litigation were substantially justified. Under EAJA, a prevailing party may receive attorney's fees "unless the court finds that the position of the United States was substantially justified," or that "special circumstances make an award unjust." *See* 28 U.S.C. § 2412(d)(1)(A). The "position of the United States" includes both "the position taken by the United States in the civil action" and "the action or failure to act by the agency upon which the civil action is based." *Id.* § 2412(d)(2)(D). "The intent of Congress in enacting the EAJA was to 'penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position.'" *Crawford v. Sullivan*, 935 F.2d 655, 659 (4th Cir. 1991) (quoting *United States v. B & M Used Cars*, 860 F.2d 121, 124 (4th Cir. 1988)). As a result, the test for whether the position of the United States was substantially justified is "one of reasonableness—did the agency's position have a 'reasonable basis both in law and fact,' or was it 'justified to a degree that could satisfy a reasonable person.'" *Hess Mech. Corp. v. NLRB*, 112 F.3d 146, 149 (4th Cir. 1997). The Government has the burden of establishing that the position of the United States was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004).

Two aspects of the substantial justification analysis are particularly relevant to the present case. First, in determining whether the government acted reasonably, courts are to consider the "totality of circumstances," in that they should "look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993). In *Roanoke River Basin Ass'n*, the Fourth Circuit took the position that courts should treat the case "as an inclusive whole, rather than

11

as atomized line-items" and rejected the view that "*any* unreasonable position taken by the government in the course of litigation automatically opens the door to an EAJA fee award." *Id.* It noted, however, that "a more egregious example of misconduct might, even if confined to a narrow but important issue, taint the government's 'position' in the entire case as unreasonable," while "a totally insupportable and clearly unreasonable position by the government on an inconsequential aspect of the litigation might not." *Id.*

Second, in conducting the analysis, courts are to consider "objective indicia" of the strength of the Government's position, including "the stage at which the merits were thereby decided, and the views of other courts on the strength, hence reasonableness, of the Government's position." *United States v. Paisley*, 957 F.2d 1161, 1166 (4th Cir. 1992). Notably, however, it is inappropriate to equate "ultimate judicial rejection of the Government's merits position—at whatever level— with its lack of substantial justification." *Id.* at 1167. At the same time, the fact that "one or more presumably reasonable Article III judges . . . at some stage of the litigation found merit" in the Government's position does not necessarily establish substantial justification. *Id.* "[M]erits decisions in a litigation, whether intermediate or final, cannot, standing alone, determine the substantial justification issue." *Id.* Nevertheless, such determinations "must be taken into account" because "of course they—and more critically their rationales—are the most powerful available indicators of the strength, hence reasonableness, of the ultimately rejected position." *Id.*

In considering the totality of the circumstances, the Court notes that this is not a case in which the Government's positions were uniformly rejected. Rather, the Government prevailed on several key aspects of Plaintiffs' case. As to Plaintiffs' claims that the DACA rescission violated the Due Process Clause and the equal protection component of the Fifth Amendment in Counts 1– 3, Judge Titus rejected those arguments. *Casa de Maryland v. U.S. Dep't of Homeland Security*,

284 F. Supp. 3d 758, 775–77 (D. Md. 2018). The Fourth Circuit declined to rule on Plaintiffs' constitutional arguments. *See Casa de Maryland*, 924 F.3d at 706. Then, in considering the equal protection issue in *University of California*, eight justices of the Supreme Court concluded that there was an insufficient basis to sustain that claim. *University of California*, 140 S. Ct. at 1915–16.

Similarly, although Judge Titus ruled in Plaintiffs' favor on the estoppel claim in Count 6, relating to information sharing, the Fourth Circuit reversed that ruling, finding that "Plaintiffs could not reasonably believe that the information they provided as part of their DACA application would never be used for immigration enforcement purposes." *Casa de Maryland*, 924 F.3d at 706. Plaintiffs never sought subsequent judicial review of this claim.

As to the APA claim in Count 5, Plaintiffs argued that the DACA rescission was procedurally improper because it was effected without first having gone through the notice-and-comment rulemaking process. The Government prevailed against that argument at the district court and the Fourth Circuit, and the Supreme Court did not address it in *University of California*. *University of California*, 140 S. Ct. at 1903 n.1; *Casa de Maryland*, 924 F.3d at 702–03; *Casa de Maryland*, 284 F. Supp. 3d at 772.

Thus, while the question of substantial justification is not be decided solely on an issue-by-issue analysis, Plaintiffs cannot escape that the fact that of the seven counts of their Complaint, they prevailed on only one, the APA claim in Count 4 ("the APA issue"), that the DACA rescission was arbitrary and capricious. Thus, in order to find that the Government's position was not substantially justified, the Court must consider whether the Government's position on this single issue is "a more egregious example of misconduct" which "might, even if confined to a narrow but important issue, taint the government's 'position' in the entire case as unreasonable." *Roanoke*

13

*River Basin Ass'n*, 991 F2d at 139. Where this issue proved to be dispositive in this case, the Court must consider the specific positions taken on that claim.

In considering the APA issue, the Court focuses first on the objective factors. As to the stage of the case at which the matter was decided, unlike some cases in which the Government's actions are deemed not substantially justified, this case and the APA issue were not decided against the Government at an early stage of the litigation in the district court. *See EEOC v. Clay Printing Co.*, 13 F.3d, 813, 815 (4th Cir. 1994) (finding that the EEOC's loss at the summary judgment stage supported the determination that the EEOC's position was not substantially justified under EAJA). Rather, the Government prevailed at the district court before Judge Titus, and Plaintiffs did not prevail until the Fourth Circuit ruled in their favor at the appellate stage. Moreover, under a fair reading of the procedural history, this case and the APA issue were effectively decided at the Supreme Court, because the Court denied the Government's petition for a writ of certiorari only after, and immediately after, it heard and decided *University of California*, which presented the exact same issue of the legality of the DACA rescission and included consideration of the APA issue. *University of California*, 140 S. Ct. at 1915. The fact that Government's position effectively required consideration by the Supreme Court weighs in favor of its argument that it was substantially justified.

Further, it is significant that the merits rulings at each stage did not uniformly reject the Government's position. Judge Titus agreed with the Government's argument that the DACA rescission did not violate the APA. *Casa de Maryland*, 284 F. Supp. 3d at 773. At the Fourth Circuit, Judge Richardson dissented on the basis that, in his view, the DACA rescission was not judicially reviewable. *Casa de Maryland*, 924 F.3d at 707 (Richardson, J., concurring in part and dissenting in part). Then, at the Supreme Court in *University of California*, the decision on the

APA issue was essentially a 5-4 ruling, with four justices agreeing with the Government that the DACA rescission was not arbitrary and capricious and did not violate the APA. As discussed above, the fact that the Government's position was accepted by an Article III judge is not dispositive on the issue of substantial justification, but the fact that the Government's position on the APA issue was accepted by at least one judge or justice at all three levels of review is not insignificant.

Notably, Plaintiffs have identified no examples of cases in which the Government's position was deemed to be not substantially justified when the question was decided by the Supreme Court in a 5-4 decision. Rather, in *Paisley*, the court held that the Government's position was substantially justified even though the Supreme Court ruled against it in a 9-0 decision, based in significant part on the fact that the Government prevailed at the Fourth Circuit, and the two judges in the majority provided a reasonable analysis in their opinion. *Paisley*, 957 F.2d at 1167–68.

Plaintiffs' primary authority for the proposition that this Court should ignore the fact that six justices or judges sided with the Government on the APA issue is markedly distinguishable. In *Clay Printing Co.*, the Fourth Circuit found that the Government's position in advancing a discrimination case initiated by the U.S. Equal Employment Opportunity Commission ("EEOC") was not substantially justified, despite the fact that there was a dissenting opinion when the district court's grant of summary judgment was affirmed, because it agreed with the district court's conclusion that the EEOC's claims were "simply implausible," that the "EEOC wasted everybody's time and was grasping at evidentiary straws," that the record was "devoid of evidence" on pretext, and that not one of the 23 cases involved in the EEOC's action could "be

considered a close case." *Id.* at 816. At no point in this litigation did any of the three levels of courts to consider the APA issue characterize it as comparably one-sided.

Still, the Court must consider not only the number of jurists who agreed with the Government's position but also their underlying reasoning. *See Paisley*, 957 F.2d at 1167. Plaintiffs argue that the Government's position was entirely unreasonable in part because the Duke Memorandum improperly relied on the judicial determination that DAPA, a separate program, was unlawful and did not adequately address the 2014 opinion of the United States Department of Justice, Office of Legal Counsel ("OLC"), which concluded that DACA is lawful. The Supreme Court, however, did not accept these arguments in *University of California* and instead concluded that they "overlook[ed] an important constraint on Acting Secretary Duke's decisionmaking authority—she was bound by the Attorney General's legal determination," specifically, Attorney General Sessions's conclusion that DACA was unlawful based on the judicial determination that DAPA was unlawful. *University of California*, 140 S. Ct. at 1910.

Plaintiffs' other primary argument that the Government's position was unreasonable, that Acting Secretary Duke did not address the reliance interests of Dreamers who had already applied for and were subject to DACA, is stronger. There is no question that the reasoning offered in the Duke Memorandum was very limited and focused only on the possibility that DACA is unlawful in light of the Fifth Circuit's ruling on DAPA. Both the Supreme Court and the Fourth Circuit accepted the failure to address reliance interests as a basis for finding that the DACA rescission violated the APA. *Id.* at 1913; *Casa de Maryland*, 924 F.3d at 704. Indeed, at the time, there was existing Supreme Court precedent that generally required an agency to consider reliance interests when changing an existing policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (stating that when an agency's "prior policy has engendered serious reliance interests that must be

taken into account"). Notably, two of the six jurists who sided with the Government, Justice Kavanaugh and Judge Richardson, did not actually seek to defend the sufficiency of the Duke Memorandum's analysis, including on the issue of reliance. *University of California*, 140 S. Ct. at 1933 (Kavanaugh, J., concurring in the judgment in part and dissenting in part); *Casa de Maryland*, 924 F.3d at 715 (Richardson, J., concurring in part and dissenting in part).

Nevertheless, Justices Thomas, Alito, and Gorsuch dissented on this point and sided with the Government's position that the DACA rescission was not arbitrary and capricious, and was not deficient in failing to discuss reliance interests, on three primary grounds: that DACA "is *per se* unlawful" because it exceeds DHS's authority under the INA, that it is unlawful because it was adopted without completion of the required steps to promulgate a legislative rule, and that reliance interests did not need to be explicitly discussed where the Government had consistently taken the public position since the adoption of DACA that it did not create reliance interests, such as when DHS stated that it "can terminate or renew deferred action at any time at the agency's discretion." *University of California*, 140 S. Ct. at 1926–28, 1930–31 (Thomas, J., concurring in the judgment in part and dissenting in part) (quoting Consideration of Deferred Action for Childhood Arrivals Process, 89 Interpreter Releases 1557, App. 4, p. 2 (Aug. 20, 2012)). Regardless of whether this Court agrees with this analysis, it does not find that the reasoning offered by these three Supreme Court justices was so deficient that it was not "justified to a degree that could satisfy a reasonable person." *Hess Mech. Corp.*, 112 F.3d at 149.

Moreover, while implicitly declining to find that the Duke Memorandum's analysis was sufficient under the APA, Justice Kavanaugh agreed with the Government's position that the Nielsen Memorandum could be considered in the APA analysis. *University of California*, 140 S. Ct. at 1935 (Kavanaugh, J., concurring in the judgment in part and dissenting in part). For his part,

17

Judge Richardson agreed with the Government's position that the DACA rescission decision was not reviewable under the APA because it was an enforcement decision committed to agency discretion. *Casa de Maryland*, 924 F.3d at 709. Neither position was accepted by the Supreme Court, and the Government's claim that actions relating to DACA and DAPA are not subject to judicial review under the APA, even if based on a reasonable legal analysis, also failed in the litigation relating to DAPA. *See Texas v. United States*, 809 F.3d 134, 167 (5th Cir. 2015). Nevertheless, where any of these arguments, if accepted, would have allowed the Government to prevail on the APA issue, a conclusion that the Government's position was not substantially justified would necessarily require this Court to conclude that each of these arguments was also not "justified to a degree that could satisfy a reasonable person." *Hess Mech. Corp.*, 112 F.3d at 149. Upon a review of those opinions, the Court does not make such a finding.

The Court also notes that just as the opinions siding with the Government did not fully agree on their reasoning, those ruling in favor of Plaintiffs likewise did not agree. While the Fourth Circuit relied in part on the failure of the Duke Memorandum to address the 2014 OLC opinion, the Supreme Court in *University of California*, as discussed above, did not accept that position and did not identify that omission as a deficiency in light of the more recent memorandum from Attorney General Sessions. Rather, the Supreme Court identified as an additional deficiency the Duke Memorandum's failure to consider that the Fifth Circuit's reasoning in finding DAPA unlawful, that the provision of immigration benefits was inconsistent with the INA, would be applicable only to comparable provisions of DACA and would not necessarily be relevant to the question of whether DACA's policy of forbearance from removing Dreamers could be retained. *University of California*, 140 S. Ct. at 1912. Plaintiffs do not appear to have made this argument, either in the district court or in the Fourth Circuit, and instead made a number of other arguments

18

that were not adopted by the Fourth Circuit or the Supreme Court in *University of California* as the basis for finding that the DACA rescission violated the APA, including that the administrative record was insufficiently robust, that the Duke Memorandum failed to address the impact of the DACA rescission on the prior prohibition on information sharing, and that DHS's citation to litigation risk as a basis for the DACA rescission was unpersuasive.

While the quality of the non-governmental party's arguments is not at issue in the substantial justification analysis, the point is that this litigation did not involve a straightforward case, such as an EEOC enforcement action or a National Labor Relations Board complaint, in which EAJA fees were available because the Government took an unreasonable position against a citizen or entity under the applicable law and facts. *See, e.g., Clay Printing Co.*, 13 F.3d at 816; *Hess Mech. Corp.*, 112 F.3d at 150–51. "While the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate . . . when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Roanoke River Basin Ass'n*, 991 F.2d at 139. Rather, this case addressed a complex dispute involving a challenge to executive action on a matter of first impression: whether and how the Government could rescind an immigration-related executive policy that has been the subject of ongoing political, policy, and legal debate. Both sides offered a variety of arguments in their efforts to invalidate or uphold the DACA rescission, not just under the APA but under other legal theories, some of which proved to be stronger than others. Not only were the courts and jurists close to evenly divided on the ultimate outcome, but those who did agree on which side should prevail did not agree on the specific reasoning. Where EAJA was intended "to penalize unreasonable behavior on the part of the government without impairing the vigor and flexibility of its litigating position," the Court does not find that the Government's decision to defend this

litigation, and the specific arguments it made, were not substantially justified. *United States v. B & M Used Cars*, 860 F.2d 121, 124 (4th Cir. 1988).

Finally, Plaintiffs' citation to various settlement agreements in impact litigation challenging the controversial addition of a citizenship question to the 2020 Census, apparently to illustrate that the United States has previously paid fees in analogous cases, does not alter this conclusion. The settlement agreements to which Plaintiffs cite are silent as to any concessions by the Government that it owed fees under EAJA or that its litigating position was not substantially justified. *See* Notice of Settlement at 1, *New York Immigration Coalition v. U.S. Dep't of Commerce*, No. 1:18-cv-02921 (S.D.N.Y. 2020) (ECF No. 697); Notice of Settlement at 1, *Kravitz v. U.S. Dep't of Commerce*, No. 8:18-cv-01041 (D. Md. 2019) (ECF No. 220); Notice of Settlement at 2, *California v. Ross*, No. 3:18-cv-01865 (N.D. Cal. 2019) (ECF No. 256). Rather, the fact that Plaintiffs have identified no court ruling ordering EAJA fees in such a case is noteworthy.

In the end, Plaintiffs achieved a significant victory, obtaining meaningful relief for hundreds of thousands of Dreamers. It does not necessarily follow, however, that attorney's fees may be awarded, as Congress has decided to limit fee awards against the Government to those cases in which the Government cannot show that its position was "justified to a degree that could satisfy a reasonable person." *Hess Mech. Corp.*, 112 F.3d at 149. Under the "totality of the circumstances," including that the Government prevailed on most of the counts of the Complaint, and where the Court does not find, based on the opinions supporting the Government's positions, that none of the arguments that could have provided a basis for the Government to prevail on the APA issue would "satisfy a reasonable person," *id.*, the Court must conclude that the

Government's position in defending this litigation was substantially justified. *See Roanoke River Basin Ass'n*, 991 F.2d at 139.

Because the Court determines that the position of the United States was "substantially justified" under EAJA, the Motion for Attorney's Fees necessarily fails. The Court therefore need not and does not address the remaining arguments on whether a fee award should be granted and the arguments on what would constitute a reasonable fee award.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorney's Fees, ECF No. 142, will be DENIED. A separate Order shall issue.

Date: March 31, 2023

THEODORE D. CHUANG
United States District Judge

21